**Edward P. WILTGEN, duly appointed conservator and guardian of the taxpayer Helen A. Wiltgen, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. No. C91–4040.**

United States District Court, N.D. Iowa, W.D.

Aug. 28, 1992.

**1388**

Edward P. Wiltgen, pro se.

Charles W. Larson, U.S. Atty., Carolyn D. Jones, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, DC, for defendant.

---

## ORDER

DONALD E. O'BRIEN, Chief Judge.

The underlying action was instituted by the plaintiff to recover funds remitted to the Internal Revenue Service ("IRS"). The defendant has moved to dismiss plaintiff's action on the grounds that (1) the statute of limitations has expired and (2) the plaintiff failed to comply with the requirements necessary to waive the sovereign immunity of the United States. The Court, having considered the materials on file, the arguments of those concerned, and being fully advised, denies the defendant's motion.

## STANDARD OF REVIEW

■ A defendant must surmount a major obstacle in order to persuade this court to dismiss the plaintiff's claim at so early a stage in the litigation. "A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."[1] *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). Thus, it is only in the "unusual case" where the complaint on its face reveals some insuperable bar to relief that a dismissal under *Rule* 12(b)(6) is warranted. *Fusco v. Xerox Corp.,* 676 F.2d 332, 334 (8th Cir.1982). The issue is not whether plaintiffs will ultimately prevail, but rather whether they are entitled to offer evidence in support of their claims. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *United States v. Aceto Agricultural Chemical Corp.,* 872 F.2d 1373, 1376 (8th Cir.1989).

## FACTUAL BACKGROUND [2]

Helen A. Wiltgen ("taxpayer") submitted four checks to the IRS as set forth below:

---

1. The *Rule* does not countenance dismissals based on a judge's disbelief of a complaint's factual allegations. *Neitzke, et al. v. Williams,* 490 U.S. 319, 327, 109 S.Ct. 1827, 1832, 104 L.Ed.2d 338 (1989).

2. For purposes of this motion, the IRS relies on the factual allegations stated in plaintiff's complaint and responses to discovery requests. This is consistent with the requirement that the court take the facts alleged by the non-moving party as true in considering a motion to dismiss.

| Date of check | Amount |
|---|---|
| April 23, 1981 | $ 826.00 |
| December 21, 1981 | 749.88 |
| January 15, 1982 | 1,145.00 |
| June 14, 1983 | 500.00 |
| Total | $3,220.88 |

These amounts were later "credited" to the taxpayer's federal income tax liabilities for 1980, 1981, 1982, and 1983. The records of the IRS indicate that no assessments were made for the 1980 and 1982 tax year, while assessments were made for 1981 and 1983 tax years on February 23, 1987. At the time the above checks were mailed, taxpayer did not direct how the payments were to be applied nor were the checks accompanied by federal income tax returns.

Edward P. Wiltgen ("conservator") was appointed conservator and guardian of taxpayer Helen A. Wiltgen by the District Court for the State of Iowa on March 21, 1986. On December 22, 1986, the conservator filed federal income tax returns on behalf of the taxpayer for 1981, 1982, and 1983, requesting refunds as set forth below:

| Taxable year | Amount requested |
|---|---|
| 1981 | $2,378.28 |
| 1982 | 500.00 |
| 1983 | 241.00 |
| Total | $3,119.28 |

On December 21, 1987, the IRS refunded the $500.00 applied to the 1982 tax year. The plaintiff's complaint requests a refund of $2,803.77, as well as generally requests the return of any other money that is not owed to the IRS for 1981, 1982, and 1983.[3] According to the records of the United States, the only amounts at issue are the $2,378.28 for the 1981 tax year and the $241.00 for the 1983 tax year, since the $500.00 for 1982 was previously refunded. The conservator contends he is entitled to a refund since Helen A. Wiltgen suffered from schizophrenia at the time she wrote the checks to the IRS.[4]

## DISCUSSION

1. Statute of limitations.

It is often expressed that tax laws are technical and, for the most part, are to be interpreted accordingly. Or, as another court phrased it, "taxation is a game which must be played strictly in accordance with the rules." *Ewing v. United States*, 914 F.2d 499, 501 (4th Cir.1990). One of the best-known rules in the Internal Revenue Code is the statute of limitations concerning income tax refunds. However, there are several technical provisions of the Code that should be examined before turning to the statute of limitations discussion.

26 U.S.C. § 7422(a), provides in part:

No suit or proceeding shall be maintained in any court for the recovery of an internal revenue tax alleged to have been erroneously or illegally assessed or collected without authority, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.

A closely related provision, 26 U.S.C. § 6402(a), provides in part:

In the case of any overpayment, the Secretary, within the applicable period of limitations, may credit the amount of such overpayment, including any interest allowed thereon, against any liability in respect of an internal revenue tax on the part of the person who made the overpayment and shall, subject to subsections

---

**3.** The amounts alleged to be due at this point in the litigation are ill-defined and controverted. For purposes of this motion only, the before-mentioned amounts will be used. The accuracy of the amounts, however, are not an important part of the court's discussion.

**4.** Schizophrenia is a chronic mental illness characterized by exacerbations and remissions and consisting of major disabilities in the areas of thinking, feeling, and behavior. It occurs in approximately .5 to 1 percent of the world's population. M. Walsh, *Schizophrenia: Straight Talk for Family and Friends* (1985); E. Torrey, *Surviving Schizophrenia* (1983).

(c) and (d), refund any balance to such person.

The defendant asserts that this action is in essence a claim for refund. Plaintiff contends that he is not requesting a refund per se, but, rather a return of all money that is not owed to the IRS plus interest and court costs.[5] The court interprets this action as a claim for the return or refund of an overpayment to the IRS. The term "overpayment" is general in scope encompassing amounts erroneously, illegally, or wrongfully collected by the IRS. Furthermore, the above sections conditions a District Court's authority to hear a suit attempting to recover funds that have been wrongfully collected, assessed, or retained upon the filing of a "claim for refund" of an overpayment. To create a distinction between a refund action and a suit for funds wrongfully retained is a fiction with little significance; *See United States v. Dalm,* 494 U.S. 596, 609, 110 S.Ct. 1361, 1368–69, 108 L.Ed.2d 548 (1990), there is no reason to overanalyze the term overpayment as it is used in § 7422(a). While the remittances may have been something other than "payments" at the time of their receipt, they were transformed into overpayments on the date the return was filed whereby the taxpayer elected to treat the remitted funds as overpayments to be returned promptly.

Defendant concedes that the initial jurisdictional requirement imposed by § 7422(a) has been met by the plaintiff in this case. A properly executed income tax return shall, at the election of the taxpayer, be a claim for refund within the meaning of §§ 6402 and 6511 for the amount of the overpayment disclosed by such return. Treas.Regs. §§ 301.6402–3(b)(4) and (5). The defendant contends that the refunds cannot be made to the plaintiff as he is beyond the refund limitations period. This argument leads to § 6511.

Section 6511 contains two statutory limitations on the refund procedure: (1) § 6511(a) and (2) § 6511(b)(2)(A). Section 6511(a) provides in part:

Claims for credit or refund of an overpayment of any tax imposed by this title in respect of which tax the taxpayer is required to file a return shall be **filed** by the taxpayer within **3 years from the time the return was filed** or **2 years from the time the tax was paid,** whichever of such periods expires the later, or if no return was filed by the taxpayer, within 2 years from the time the tax was paid. ...

This first limitation requires that a claim for refund must be filed within three (3) years of the date that the original return is filed.[6] As mentioned previously, the IRS does not dispute that plaintiff's claims for refunds were timely filed pursuant to this provision. This is entirely correct since the original returns, filed on December 22, 1986 also served as the plaintiff's claims for refunds.

Defendant, satisfied that plaintiff has met the requirements imposed by both §§ 7422 and 6511(a), asserts that the plaintiff fails comply with the requirements of § 6511(b)(2)(A). Section 6511(b)(2)(A) provides in part:

If the claim was filed by the taxpayer during the 3–year period prescribed in subsection (a), the **amount** of the credit or refund shall not exceed the **portion of the tax paid within the period, immediately preceding the filing of the claim, equal to 3 years plus the period of any extension of time for filing the return.**

.    .    .    .    .

This second limitation provides that a claim for refund cannot be honored if the tax was paid three (3) or more years before the claim for refund was filed.[7] This is the crux of defendant's motion to dismiss.

---

**5.** In plaintiff's brief in support of his resistance to dismissal, he further states:

Since the beginning of this matter, the conservator/guardian has requested from the IRS merely the overpayment of monies that were sent to the IRS [by the taxpayer] without rhyme or reason. ... [T]he plaintiff is not bringing a tax refund suit but is merely asking that the IRS return the money that [it] received from a mentally ill person.

**6.** TM 28–5th, Statute of Limitations (1992), pp. A–38 *et seq.*

**7.** *See* Rev.Rul. 76–511, 1976–2 CB 428.

Defendant asserts that there is no dispute that the amounts sent to the IRS were "paid" prior to December 22, 1983, and the claim for refund is barred by the statute of limitations thereby making the dismissal of the complaint appropriate. It is true that there is no dispute concerning when the remittances were sent and received by the IRS, however, the court is unpersuaded by the assertion that the plaintiff's claim is barred by the provisions of § 6511(b)(2)(A).

In order to properly apply the above provision, the Court must determine (1) when was the claim for refund deemed filed and (2) when were the 1981, 1982, and 1983 taxes deemed paid? Having already disposed of the former question, December 22, 1986, the court now addresses the latter issue of when were the taxes deemed paid.

Ordinarily, the date on which the taxpayer remits funds in payment of a tax liability is the date of payment. Thus, in the usual case, where a taxpayer files a tax return and remits the amount shown due, the statute of limitations commences to run on that date. However, since several checks were sent by the taxpayer to the IRS, unaccompanied by income tax returns, this case is not an ordinary situation. The defendant asserts that these remittances were in effect "estimated tax payments" paid on the date they were received.

Taxes paid as estimated income tax for any taxable year are deemed paid on the last day prescribed for filing the return without regard to any extension.[8] For example, a calendar year individual taxpayer files her 1983 tax return on June 1, 1984 pursuant to an extension granted by the IRS. Her return indicates an estimated tax payment credit of $500.00. For purposes of any subsequent claim for refund, the $500.00 is deemed paid on April 15,

1984, the prescribed period for filing the income tax return.

Assuming arguendo, that the four remittances in this case were indeed estimated tax payments, they should have been provided for, by the IRS, as follows:[9]

| Date of check | Deemed payment date |
| --- | --- |
| April 23, 1981 | April 15, 1982 |
| December 21, 1981 | April 15, 1982 |
| January 15, 1982 | April 15, 1982 |
| June 14, 1983 | April 15, 1984 |

However, the IRS claims that these amounts were "credited" to plaintiff's federal income tax liabilities for 1980, 1981, 1982, and 1983. The defendants do not explain the procedure leading up to this conclusion. The court is not convinced that these remittances were actually estimated tax payments.

Generally, there is a presumption that a taxpayer is making a payment at the time he files a return with a remittance. However, there are two established exceptions to this presumption: (1) a remittance accompanied by a contest of liability for the tax and (2) a remittance that is "disorderly" or considered a "dumping" in that there is no indication on the return of her asserted tax liability.[10] Neither of these recognized exceptions directly control the case where no return is submitted at all. However, several checks remitted to the IRS, on various dates, with varying amounts most clearly resemble dumping and easily can be referred to as extremely disorderly.

Classifying the nature of the remitted funds is not an easy exercise. The federal courts have taken divergent approaches on the question of whether a given remittance is a payment of tax or merely a "deposit"

---

**8.** 26 U.S.C. § 6513(b)(2) provides in part:

Any amount paid as estimated income tax for any taxable year shall be deemed to have been paid on the last day prescribed for filing the return under section 6012 for such taxable year (determined without regard to any extension of time for filing such return).

**9.** Ordinarily, estimated tax payments are made by individuals according to the following schedule:

| Date of check | Deemed payment date |
| --- | --- |
| April 18, year 1 | April 15, year 2 |
| June 15, year 1 | April 15, year 2 |
| September 15, year 1 | April 15, year 2 |
| January 15, year 2 | April 15, year 2 |

**10.** *Budd v. United States*, 252 F.2d 456 (3d Cir. 1957); *Binder v. United States*, 590 F.2d 68 (3d Cir.1978); *Charles Leich & Co. v. United States*, 329 F.2d 649, 165 Ct.Cl. 127 (1964).

or an "advance payment." To maintain that "a payment is a payment is a payment" is unsupported by both law and logic.

The starting point for answering the question whether the remittances sent by the plaintiff were payments of tax is *Rosenman v. United States*, 323 U.S. 658, 65 S.Ct. 536, 89 L.Ed. 535 (1945). The *Rosenman* Court dealt with executors of an estate who had remitted money to the IRS in connection with an estate tax dispute. They later filed for a refund. The question was whether the remittance constituted "payment of a tax". If so, plaintiffs would have lost, being outside the three-year limit for a tax refund claim. However, the Court ruled that the remittance was merely a "deposit" placed in a special suspense account created only for depositing money received when no assessment is then outstanding against the taxpayer. Since the actual assessment of tax due had been made by the IRS less than three years before the taxpayer filed the claim, it was held that the plaintiffs were within the statute of limitations.

■■■ The lower courts are far from being in agreement in their application of *Rosenman*. The Tax Court, the Claims Court, and the Third Circuit hold that an assessment in not a necessary precondition for a payment.[11] The Second, Fourth, Sixth, and Tenth Circuits do not necessarily require an assessment before a payment may be made.[12] However, the Fifth, Seventh, and Eighth Circuits stand for a stricter interpretation of *Rosenman*.[13] Although the before mentioned cases are not of recent vintage, they are nonetheless persuasive. Indeed, it often happens that those cases closer in time to the enactment of a statute or the handing down of a precedent are in a better position to assess its true character. *See Ewing v. United States*, 711 F.Supp. 265, 269 (W.D.N.C. 1989).[14]

A closer analysis of the precedent in the Eighth Circuit reveals that *United States v. Dubuque Packing Company*, 233 F.2d 453 (8th Cir.1956), and *Estate of Goetz v. United States*, 286 F.Supp. 128 (W.D.Mo. 1968), clarify what would otherwise be a problematic analysis of this issue.

In *Dubuque Packing Company*, the taxpayer brought an action to recover refunds of 1941 and 1942 taxes to the extent of overpayments resulting from certain retroactive adjustments to its net income for those years occasioned by the taxpayers election to modify its method of inventory valuation. The Commissioner considered a portion of the overpayments barred by the statute of limitations provided in § 322(b) of the Internal Revenue Code of 1939.[15] The *Dubuque* Court said:

> ... [A] taxpayer may transfer money to tax collecting authorities for a number of reasons other than the satisfaction of a clearly defined tax liability ... **[N]ot every transfer of money by a taxpayer to**

**11.** *Dowell v. Commissioner,* 41 T.C.M. (CCH) 390 (aff'd in 10th Cir. in an unpublished opinion); *Draper v. Commissioner,* 32 T.C. 545 (1959); *Fortugano v. Commissioner,* 41 T.C. 316 (1963), aff'd, 353 F.2d 429 (3d Cir.1965); *Northern Natural Gas Co. v. United States,* 354 F.2d 310, 173 Ct.Cl. 881 (1965); *Moskowitz v. United States,* 285 F.2d 451, 152 Ct.Cl. 412 (1961); *Richardson v. Smith,* 301 F.2d 305 (3d Cir.1962); *Hill v. United States,* 263 F.2d 885 (3d Cir.1959); *Rose v. United States,* 256 F.2d 223 (3d Cir.1958); *Binder,* supra.

**12.** *Colt's Manufacturing Co. v. Commissioner,* 306 F.2d 929 (2d Cir.1962); *Ewing v. United States,* 914 F.2d 499 (4th Cir.1990); *Ameel v. United States,* 426 F.2d 1270 (6th Cir.1970); *United States v. Miller,* 315 F.2d 354 (10th Cir. 1963).

**13.** *Thomas v. Mercantile Nat'l Bank at Dallas,* 204 F.2d 943 (5th Cir.1953); *Ford, Jr., et al. v. United States,* 618 F.2d 357 (5th Cir.1980); *Plankinton v. United States,* 267 F.2d 278 (7th Cir. 1959); *United States v. Dubuque Packing Co.,* 233 F.2d 453 (8th Cir.1956); *Estate of Goetz v. United States,* 286 F.Supp. 128 (W.D.Mo.1968).

**14.** The statute involved in *Rosenman* was 25 U.S.C. § 910 (1939). That provision is now 26 U.S.C. § 6511(a) (1990). 26 U.S.C. § 6511(b)(2)(A) was amended in 1958 to reflect its current language.

**15.** § 322(b)(1) provides that no refund shall be allowed or made unless the claim for refund is filed by the taxpayer (1) within three years from the time the return was filed by the taxpayer or (2) within two years from the time the tax was paid, whichever expires later.

a Federal tax authority will constitute a "payment" under the laws relating to Internal Revenue. ... [I]n the case of a proper tax return, the return itself defines the obligation, but where a taxpayer makes a transfer of money to the collector, the transfer itself does not define the tax obligation. Some further act is necessary.

*Dubuque Packing Company,* 233 F.2d at 459. The Court of Appeals held that the reasoning applied by the lower court, that transfers of money made by the taxpayer did not have the status of "payment" until the tax deficiencies were formally assessed by the Commissioner, was quite sound. The Court stated that some further act is necessary beyond the mere remittance of money, such as filing out a tax return or signing a form admitting further liability.

A district court case that followed *Dubuque Packing Company* focused on the same issue. In *Estate of Goetz,* the taxpayer brought an action to recover a sum paid to the IRS following a statutory notice of deficiency on income tax alleged to be due against the estate of M. Karl Goetz and his widow. The plaintiffs claimed that the tax assessment fell outside the statute of limitations contained in Sec. 6501(a). The *Goetz* court said:

It does not follow from the fact that the Service had the taxpayers' money in hand prior to the running of the statute of limitations, that the money was duly collected. **In order for the tax liability to have been duly collected it must have been properly assessed** ... [W]e believe that plaintiffs' check served as a deposit to be utilized by the Government in the event a tax obligation [was] subsequently defined and imposed.... We are persuaded in so holding by the reasoning of the court in *Rosenman v. United States* [citation omitted] which recognized that **payments prior to assessment are deposits and not payments of taxes duly collected.**

*Estate of Goetz,* 286 F.Supp. at 131. Though the two cases differ somewhat from the controlling facts of this case, the reasoning of both courts, as to the effect of the transfer of funds prior to any assessment of a tax obligation in regard thereto, is sound and is applicable to the situation currently before the Court.

Although several circuits apply a less strict interpretation of *Rosenman,* the Eighth Circuit adopts an unwavering bright-line rule that payments prior to a formal assessment are deposits and not payments of taxes. However, even if the less stringent standards of the sister circuits were applicable to this case, the resulting characterization of the remittances as deposits would remain undisturbed. The other circuits consider factors beyond the time of the formal assessment of tax. Those factors include: (1) when the tax liability is defined; (2) the taxpayer's intent in remitting the money; and (3) how the IRS treats the remittances upon receipt. These factors can be grouped together and referred to as "payment indicia", which is something more than the mere remittance of money to the IRS indicating its character as a payment.

The records of the IRS indicate that assessment for the 1981 and 1983 tax years was made on February 23, 1987. On this date, the transfers became "payments" for the first time because from that day forward, the taxpayer has a fair opportunity to determine whether she has a claim for refund, and the liability for taxes became defined.[16] It cannot be shown that Helen Wiltgen intended for the random transfers to serve as tax payments, in fact most areas of the law have a presumption that certain action taken by mentally ill individuals are voidable upon their direction. Lastly, as previously eluded to, it is dubious whether the IRS treated the remitted funds as estimated tax payments at the time they were received. The IRS had no indication that these remittances were estimated individual income tax payments. It

**16.** As mentioned previously, in many jurisdiction that follow a relaxed interpretation of *Rosenman,* the date on which the tax returns were filed by the conservator (December 22, 1986) would be the first defining date of tax liability since the remitted funds would be clearly established as payments for the first time by the taxpayer.

is possible that such remittances could be made for estate or gift tax purposes as well. Clearly, even in jurisdictions applying strict interpretations of *Rosenman,* these additional factors would lead to the conclusion that the amounts transferred to the IRS were "advance deposits" or at least "unclassified collections."

Plaintiff's core argument is that the defendants should return all amounts not legally owing to the IRS since Helen Wiltgen was incapable of fulfilling her duties as a taxpayer at that time due to her mental illness. From outward appearances, this is an equitable tolling argument. The defendant contends that sovereign immunity concerns have traditionally generated strict adherence to time limitations in actions against the government and equitable tolling of the period of repose is "inapplicable" to § 6511 under the facts of this case. The court disagrees.

In *Irwin v. Veterans Administration,* 498 U.S. 89, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990), the Supreme Court noted that the same equitable principles applicable to suits between private parties should apply to suits against the government. In general, mental incompetency is an appropriate situation in which to invoke equitable tolling principles against private parties, and this should be no different simply because the government is the named defendant.

█ In particular, the defendant asserts that equitable tolling is "inappropriate" under § 6511 given its statutory history and the facts of this case. The defendant recognizes that in *Johnsen v. United States,* 758 F.Supp. 834 (E.D.N.Y.1991), the court held that equitable tolling principles applied

to § 6511 due to mental incapacity. In that case, the government moved to dismiss the action for a tax refund on the grounds that the claim was barred by the statute of limitations.[17] The *Johnsen* court quoted extensively from *Irwin* in concluding that "the legislative history of § 6511(b)(2)(A) is absolutely devoid of any indication that Congress intended to preclude such equitable tolling in tax refund actions." Absent such intention, the court must ask whether tolling the period of repose would conflict with the statutes purpose or intent. Since equitable tolling for mental incompetence is analyzed on a case-by-case basis, the court now turns to the appropriateness of such an equitable doctrine in the case at bar.

█ In order to serve the ends of justice where technical forfeitures would unjustifiably prevent a trial on the merits, the doctrine of equitable tolling may be applied to toll the running of a statute of limitations, provided it is in conjunction with the legislative scheme.[18] The equitable tolling doctrine is read into every federal statute of limitations, and the decision whether the doctrine should be applied lies within the sole discretion of the court. *Holmberg v. Armbrecht,* 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743 (1946).

It is difficult to imagine that preventing the statute of limitations from running against a mentally ill individual would contravene the legislative purpose behind § 6511(b)(2)(A). As difficult as it is for those lucky individuals who have full control of their minds and bodies to negotiate through the tax-code labyrinth and diligently fulfill their duties as taxpayers, imagine the difficulty confronting the mentally ill

---

**17.** Ethel Multzman was diagnosed as suffering from senile psychosis in 1985. In 1987, Mrs. Multzman and her adult son were adjudicated incompetents. The plaintiff was appointed Committee of the Person and Property of Mrs. Multzman in 1987. As soon as she discovered that a prepared 1983 return had never been filed, she immediately filed an administrative claim for a refund of excess payments made during 1983 which was denied. The court held that the statute of limitations was tolled until the appointment of the conservator/Committee.

The court recognizes that the above decision was later vacated by a private agreement be-

tween the parties. However, this does not miraculously undermine the legal analysis which was applied by the District Court for the Eastern District of New York. Unlike its legal effect on the parties concerned, its persuasive effect on the development of the law has not been abandoned.

**18.** Equitable estoppel is a related equitable principle that looks to the conduct of one party in preventing another from exercising her rights or assuming inconsistent positions to the detriment of another.

inherent in our system of self-assessment. This court views mental fitness as a presupposition to the provisions and spirit of the Internal Revenue Code.

Mental disease is no different than any physical or legal barrier in the justice system for which tolling exceptions are routinely recognized. No statute of limitations should begin to run until such a barrier has, in some way, been lifted or removed. Helen Wiltgen's constraints were not removed until Edward Wiltgen was appointed conservator and guardian on March 21, 1986. It was at this time Helen's interest and duties, as a citizen and a taxpayer, could once again resurface and rise to common ground and interact with those who take soundness of mind for granted.[19] There is no reason why mental illness, if legally proven, should not toll the statute of limitations contained in § 6511(b)(2)(A).

The government maintains that there was no misconduct on the part of the IRS.[20] The court wonders what administrative procedures would have been invoked by the IRS had the taxpayer owed money, instead of being due a refund. While the action taken by the IRS in notifying the taxpayer of her precarious situation through a number of letters may not amount to misconduct, it surely is inconsistent with those steps that would have been taken to contact her had she owed the IRS a sum certain. However, this is merely an observation which does not affect this discussion.

### 2. Sovereign immunity.

▮ The defendant argues that by improperly naming the IRS, rather than the United States, as the appropriate party to defend this action, the plaintiff has failed to meet the conditions found in 26 U.S.C. § 7422 and 28 U.S.C. § 1346(a)(1) which waive sovereign immunity.[21] The plaintiff contends that if he did err, it was not intentional, in that he received no instruction from those governmental bodies he contacted in search of assistance. Plaintiff further contends that "the IRS is grasping at technicalities" instead of letting the District Court make its decision.

Because the plaintiff is proceeding in this action pro se, it is not difficult to understand his frustrations with what must seem like a "sea of technicalities." Rule 15(a) of the Federal Rules of Civil Procedure, provides in part:

A party may amend the party's pleadings once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time with 20 days after it is served. Otherwise a party may amend the party's pleadings only **by leave of the court** or by written consent of the adverse party; and **leave shall be freely given when justice so requires.** A party shall plead in response to an amended pleading within the time remaining for response to the original pleading or within 10 days after service of the amended pleading, whichever period may be the longer, unless the court otherwise orders.

Fed.R.Civ.P. Rule 15(a) (1991). The factors mitigating against the granting of a motion to amend the complaint to reflect the proper party, the "United States" in this case, are insignificant here. *Perkins v. Spivey*, 911 F.2d 22 (8th Cir.1990). The fact brought to the court's attention that all parties involved in this matter have interchangeably used different designations as to the defendant shows that no prejudice

---

**19.** This date precedes the assessment date of February 23, 1987. Thus, any delay in pursuing a claim for credit or refund after the defining date of payment would not be excused on the grounds of mental illness since this barrier has already been removed.

**20.** Equitable tolling centers on the ability of the plaintiff to pursue her rights, while equitable estoppel's focus is on the conduct of one party preventing another from exercising her rights.

The defendant appears to have fused the two doctrines together when it addressed the subject of its own alleged misconduct.

**21.** A tax refund suit must be brought against the "United States". As the defendant mentioned in its brief in support of this motion, an agency of the United States may not be sued absent the express consent of Congress.

will result to the non-moving party since the Department of Justice is well aware of this matter and has been proceeding as it usually would. The Court now directs the plaintiff to amend his complaint to reflect the "United States of America" as the properly-named defendant.

## CONCLUSION

Accordingly, the defendant has not overcome the major burden required to persuade this court to dismiss the plaintiff's claim. This court concludes plaintiff may be able to show a set of facts wherein the statute of limitations has not expired, and the defendant is not immune from suit based on sovereign immunity. The defendant's motion to dismiss is hereby denied.

IT IS SO ORDERED.