GIFFORD PINCHOT ALLIANCE, SDS Lumber Co., Southern Oregon Timber Industries Association, and Northwest Forest Resource Council, Plaintiffs,

v.

John F. BUTRUILLE, in his official capacity as Regional Forester, U.S.D.A., Forest Service, and F. Dale Robertson, in his official capacity as Chief, U.S.D.A., Forest Service, Defendants,

and

Gifford Pinchot Task Force and Headwaters, Defendants–Intervenors.

Civ. No. 90–534–FR.

United States District Court, D. Oregon.

July 16, 1990.

---

Mark C. Rutzick, Cynthia L. Hull, Preston Thorgrimson Shidler Gates & Ellis, Portland, Or., for plaintiffs.

Charles H. Turner, U.S. Atty., Thomas C. Lee, Asst. U.S. Atty., Val J. McLam Black, Sp. Asst. U.S. Atty., Portland, Or., for defendants.

Victor M. Sher, Todd D. True, Corrie J. Yackulic, Sierra Club Legal Defense Fund, Inc., Seattle, Wash., Richard A. Parrish, Portland, Or., for defendants-intervenors.

## OPINION

FRYE, District Judge:

The matters before the court are the cross-motions of the parties for summary judgment.

## INTRODUCTION

Plaintiffs, Gifford Pinchot Alliance, SDS Lumber Co., Southern Oregon Timber Industries Association, and Northwest Forest Resource Council (the plaintiffs), are associations of forest products companies and two individual companies that operate sawmills and other wood processing facilities in the States of Oregon and Washington. The defendants are John F. Butruille, in his official capacity as the Regional Forester of the Pacific Northwest Region of the United States Forest Service, and F. Dale Robertson, in his official capacity as Chief of the United States Forest Service (the Forest Service).

The plaintiffs allege that the Forest Service is failing and refusing to offer for sale 7.7 billion board feet of timber by September 30, 1990 as required by Section 318(a)(1) of the Department of the Interior and Related Agencies Appropriations Act, Fiscal Year 1990, Pub.L. 101–121.

Plaintiffs seek the following relief:

1. A declaration that defendants are violating Section 318(a)(1) by failing and refusing to offer 7.7 billion board feet of timber for sale from the national forests of the States of Oregon and Washington by September 30, 1990; and

2. An order of mandamus compelling defendants to offer 7.7 billion board feet of timber for sale from the national forests of the States of Oregon and Washington by September 30, 1990; and

3. A permanent injunction prohibiting the defendants from failing and refusing to offer 7.7 billion board feet of timber for sale from the national forests of the States of Oregon and Washington by September 30, 1990 and compelling them to do so.

## UNDISPUTED FACTS

For decades, the Forest Service has operated a timber sales program on nineteen national forests within the States of Oregon and Washington. In the 1989 timber sales year, the Forest Service program from the national forests within the States

of Oregon and Washington was the subject of an injunction issued in *Seattle Audubon Society v. Robertson*, Civil No. 89–160 (W.D.Wash.). This injunction prevented the Forest Service from approaching the harvest level of 4.350 billion board feet (BBF) contemplated in the Department of the Interior and Related Agencies Appropriations Act, 1989, Pub.L. No. 100–146, 102 Stat. 1774, 1803–1810.

On October 23, 1989, President George Bush signed into law Section 318 of the Department of the Interior and Related Agencies Appropriations Act, Fiscal Year 1990, Pub.L. 101–121 (Section 318). Section 318 enacted a two-year harvest level of 7.7 BBF in order to address the shortfall in fiscal year 1989 and included anti-injunction provisions preventing the courts from blocking the sales as in fiscal year 1989. Section 318(b)(6)(A) and Section 318(g). The intent of Section 318 was to balance the goal of ensuring a predictable flow of public timber for fiscal years 1989 and 1990 with the goal of preserving significant old growth forest stands as the habitat of the northern spotted owl.

Plaintiffs rely upon Section 318(a)(1) which provides as follows:

The Forest Service shall offer, notwithstanding the provisions of the Federal Timber Contract Payment Modification Act of 1984 (16 U.S.C. 618(a)(5)(C)), an aggregate timber sale level of seven billion seven hundred million board feet of net merchantable timber from the national forests of Oregon and Washington for fiscal years 1989 and 1990. Such timber sales shall be consistent with existing land and resource management plans approved except, in the case of the Mapleton Ranger District of the Siuslaw National Forest, Oregon, such sales shall be consistent with preferred alternative of the draft land and management plan and accompanying draft environmental impact statement dated October 1, 1986, pending approval of a final land and resource management plan for the Siuslaw National Forest: Provided, That of the seven billion seven hundred million board foot aggregate timber sale level for fiscal years 1989 and 1990, timber sales offered from the thirteen national forests in Oregon and Washington known to contain spotted owls shall meet an aggregate timber sale level for fiscal years 1989 and 1990 of five billion eight hundred million board feet of net merchantable timber: Provided further, That the sales volume shall be distributed in the same proportion between Oregon and Washington national forests known to contain northern spotted owls based on the average sale volume for fiscal years 1986 through 1988.

On the day that Section 318 became law, John F. Butruille, Regional Forester of the Pacific Northwest Region of the United States Forest Service, wrote to his Forest Supervisors and Directors as follows:

Now that the Hatfield/Adams Amendment has passed, it is time we get about the business of trying to accomplish its objectives. As I have stated before, it will be difficult, but not impossible. I am committed to 1) doing the best we can to achieve the selling of 7.7 BBF for the 2–year period; 2) taking every opportunity to be responsive toward concerns for spotted owls, fragmentation of significant old growth stands, and Advisory Boards; 3) not violating any standards and guidelines or laws relative to doing a quality, environmentally sound job; and 4) make sure we are sensitive to the needs and health and welfare of our employees. If we are true to these four principles, I am confident that come October 1, 1990, this Region, and the Forest Service in general, can be proud of the results.

Declaration of John F. Butruille, Exhibit A, p. 1.

Each of the nineteen forests in the Northwest Region was allocated a portion of the 7.7 BBF timber sale requirement. The Forest Service then began the task of preparing the sales necessary for each of the nineteen national forests to meet their allotment of the 7.7 BBF total sale level and to comply with all other provisions of Section 318 and other applicable laws. The preparation and designation of a timber sale is labor intensive and weather depend-

ent, and under average conditions takes anywhere from three months to five years to complete. At the time Section 318 was enacted, the Forest Service had few timber sales prepared, designed and ready to advertise for sale because of litigation over the spotted owl and the cutting of its habitat, old growth timber. Of the sales that were prepared, designed and ready to advertise for sale at the time that Section 318 was enacted, many required extensive adjustments in order to comply with the special requirements of Section 318.

Section 318(a) provides that the thirteen "owl forests" in the States of Oregon and Washington provide 5.8 BBF of the 7.7 BBF and that this requirement be divided among forests in the States of Oregon and Washington, based on the average sale volume for these forests for the fiscal years 1986 through 1988. Shortfalls from sales that cannot be met in the old growth forests of one state cannot necessarily be made up in the old growth forest of the other state. Section 318(a) constrains the flexibility of the Forest Service in offering sales.

Sections 318(b)(1) and (b)(2) direct the Forest Service to sell ecologically significant old growth only as necessary. When sales of old growth are necessary, Section 318 directs the Forest Service to minimize the effects of fragmentation within each sale. Section 318(e) provides that nothing shall affect interagency cooperation under Sections 7(a)(2) and 7(a)(4) of the Endangered Species Act and its regulations. The Forest Service has a continuing duty to cooperate with the United States Fish and Wildlife Service as it prepares timber sales. The Fish and Wildlife Service recently listed the northern spotted owl as a threatened species under the Endangered Species Act. This decision substantially affects the ability of the Forest Service to meet the goal set by Congress in the time set by Congress. In March, 1990, the Fish and Wildlife Service issued a conference report which contained three levels of concern for the habitat of the northern spotted owl. The effect of this report on the Forest Service was that timber sales that were already prepared had to be modified, re-

moved from sale, or held for sale until the last possible moment and then sold only if absolutely necessary. Because of the listing of the northern spotted owl as an endangered species, the sale of 450 MMBF of timber has been necessarily modified, eliminated, or held in abeyance.

Section 318(c) calls for the creation of advisory boards. In order to comply with the requirement for advisory boards, the Forest Service must proceed through a process of selection and appointment of members to those advisory boards. As the Forest Service prepares timber sales, they are referred to these advisory boards. The advisory boards frequently propose adjustments to the timber sales. These proposed adjustments require field checking. In its summary of June 11, 1990, the Forest Service estimated that in fiscal year 1990 the sale of 352 MMBF of timber was deferred in whole or in part because of the recommendations of advisory boards.

Section 318 does not revoke the right of members of the public to file administrative appeals of timber sales even though those sales have been prepared in compliance with Section 318. Since the enactment of Section 318, 102 administrative appeals have been filed involving 581 MMBF of timber. Processing these appeals takes the time of many of the people who would otherwise be preparing timber sales. Timber sales that would contribute to meeting the 7.7 BBF level are delayed during the appeals process.

Litigation also continues to affect the number of sales available. For example, on May 11, 1990, the court in *Seattle Audubon Society v. Robertson*, Civil No. 89–160 (W.D.Wash.), enjoined the defendants from proceeding with the 6.9 MMBF Cowboy timber sale on the Umpqua National Forest based upon inadequate support in the record relating to minimizing fragmentation of ecologically significant old growth, a requirement of Section 318(b).

On May 2, 1990, defendant John Butruille testified before Congress as follows:

Mr. Butruille: Okay Congressman. The situation on the 7.7 billion board feet

target that Region 6 had, as of 4–20, we have awarded 3.9 billion board feet of that target. We have an additional 300 million feet that is advertised, leaving a remaining balance to be sold between now and the end of the fiscal year, or awarded between now and the end of the fiscal year of 3.5 billion.

Mr. Dicks: Are you going to make that?

Mr. Butruille: It is going to be extremely tight. I think we will be within 5 percent.

Section 318(h) requires the Forest Service to submit monthly reports to Congress. These reports show, among other things, the progress toward the 7.7 BBF level set by Congress. In its June 1, 1990 report to Congress, the Forest Service reported that as of May 20, 1990, it had offered for sale 3.995 BBF of timber. The June 1, 1990 report states:

> The Region estimates that approximately 5 percent of the 7.7 billion board feet called for in Section 318 is at risk of not being offered by Oct. 1. Contributing factors include: 1) an inability to substitute or modify sales or units recommended as "sell as last resort" by the Fish and Wildlife Service; and 2) the delays of sales because of lawsuits and appeals.

In his declaration submitted to this court in support of his motion for summary judgment, Butruille states:

> Barring additional court injunctions, unforeseen consequences due to listing of the owl under the Endangered Species Act, or natural catastrophe, such as wildfires, preventing the conclusion of the necessary field work for timber sale preparation, as explained in the declaration of Wendall L. Jones, the Region will offer 7.361 BBF by the end of the present fiscal year, a figure within 5 percent of the 7.7 BBF (95.6%).

Declaration, Paragraph 7.

The declaration of John Butruille concludes:

> If we [the Forest Service] were forced to insure 100 percent compliance with the 7.7 billion requirement we would have to reconsider our actions in some of those areas where discretion exists. For example, we could give minimal consideration to the advisory boards and offer sales contrary to their recommendations, until the full 7.7 BBF level had been met. In the same way, we could abandon our consideration of minimizing the fragmentation of ecologically significant old growth stands if such consideration compromised our ability to guarantee attainment of the 7.7 BBF. Spotted owl habitat characteristics in areas proximate to expanded SOHAs could be compromised. The recommendations of [the Fish and Wildlife Service] given us in the conference reports can be ignored. However, after working with Section 318 intensely for over half a year, none of these choices to increase timber sale offering level appear to be in the spirit of Section 318. Put another way, the short-term gain in volume would come at a very high long-term price in terms of loss of good will of various agencies and publics with which we must coordinate our programs.

Declaration, Paragraph 31.

### CONTENTIONS OF THE PARTIES

Plaintiffs argue that the statutory directive that "the Forest Service shall offer ... an aggregate timber sale level of seven billion seven hundred million board feet of net merchantable timber from the national forests of Oregon and Washington for fiscal years 1989 and 1990" imposes a mandatory duty on the Forest Service to comply precisely with the directive. Plaintiffs argue that 1) the Forest Service does not intend to offer 7.7 BBF of timber as directed; 2) there are sufficient timber sales prepared and available on the national forests of the States of Oregon and Washington for the Forest Service to offer 7.7 BBF; 3) that the Forest Service admits in paragraph 31 of Butruille's declaration that the level directed by Congress can be met; and 4) the Forest Service is in violation of Section 318(a)(1), and therefore plaintiffs are entitled to a writ of mandamus to assure that the Forest Service complies with the law.

The Forest Service contends that this action is premature; that it is making every effort possible to comply with every provision of Section 318, including the requirement of cutting 7.7 BBF and that the plaintiffs' have produced no evidence that the Forest Service is arbitrarily or unreasonably withholding timber sales that it has a duty to sell. The Forest Service argues that annual harvest levels are subject to considerable adjustment based upon many factors such as funding levels, the accuracy of estimates in the sales, and the requirements of other laws and regulations and that the provisions of Section 318 must be read as an approximate amount of timber that the Forest Service is to sell during the fiscal year. The Forest Service asserts that since the schedule used for approximating the total timber to be offered by September 30, 1990 falls within 5% of the 7.7 BBF there is substantial compliance with the law and a writ of mandamus is unwarranted. The Forest Service contends that all of the provisions of Section 318 must be followed along with all of the other applicable laws and that the actions of the Forest Service when viewed in light of all the provisions of Section 318 and in the light of the requirements of the other laws meet statutory requirements.

## APPLICABLE STANDARD

Summary judgment should be granted only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). The burden to establish the absence of a material issue of fact for trial is on the moving party. *British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 951 (9th Cir.1978), *cert. denied*, 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979). This burden "may be discharged by 'showing' ... that there is an absence of evidence to support the nonmoving party's case." *Cel-*

*otex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The burden shifts to the nonmoving party to "go beyond the pleadings and ... designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. at 2553.

Assuming there has been adequate time for discovery, summary judgment should then be entered against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. at 2552. All inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). When different ultimate inferences can be reached, summary judgment is not appropriate. *Sankovich v. Life Ins. Co. of N. Am.*, 638 F.2d 136, 140 (9th Cir.1981).

## ANALYSIS AND RULING

The issue in this case [1] is whether plaintiffs are entitled to equitable relief under 28 U.S.C. Section 1361 because the Forest Service has predicted prior to the end of the fiscal year that it will not meet the level of timber sales mandated by Congress. The Forest Service candidly admits that "the Region will offer 7.361 BBF by the end of the present fiscal year." Declaration, para. 7. Section 318(a)(1) unambiguously states that "[t]he Forest Service shall offer ... an aggregate timber sales level of seven billion seven hundred million board feet of net merchantable timber."

■ A district court may issue a writ of mandamus to "compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. Mandamus is, however, an extraordinary remedy proper only when 1) the plaintiff has a plain

---

1. Plaintiffs' second claim for relief for violation of Section 318(a)(1) is premature. The Forest Service has implemented all provisions of Section 318 including the sales level required by Section 318(a)(1). Plaintiffs are not entitled to prevail under their second claim for relief for a violation of Section 318(a)(1).

right to have an act performed; 2) the defendant has a plain duty to perform it; and 3) there is no other adequate remedy available to the plaintiff. The act to be done must be responsive to a positive command and so plainly prescribed as to be free from doubt. The entitlement of the plaintiff to have the act performed must be clear and certain, and the duty of the officer who is to perform the act ministerial. *Smith v. Grimm*, 534 F.2d 1346, 1352 (9th Cir.), *cert. denied*, 429 U.S. 980, 97 S.Ct. 493, 50 L.Ed.2d 589 (1976).

█ Even when entitlement is clear, however, mandamus may not be used to direct acts within an agency's discretion. In *Pattillo v. Schlesinger*, 625 F.2d 262 (9th Cir.1980), the court found that there was no dispute as to the entitlement of former service personnel to retroactive pay but that mandamus was not appropriate because there were a variety of possible methods of notification and payment that might be devised, and no clear command exists to mandate the selection of any particular method. The court explained that "[u]nder these circumstances, mandamus is not an appropriate or permissible remedy, and the district court correctly dismissed the action insofar as it sought mandamus for a breach of a legal duty." 625 F.2d at 266.

█ "An aggregate timber sale level of seven billion seven hundred million board feet of net merchantable timber ..." is a mark established by Congress to direct agency action consistent with the intent of Congress. From the initial enactment of Section 318 the Forest Service has acted consistently with its duty to meet the requirements of Section 318(a)(1) as well as the many other provisions of Section 318.

Many factors have influenced the decision of the Forest Service to offer or not to offer particular timber sales. There is timber in the national forests that the Forest Service is not offering for sale because of 1) an inability to modify the sales or unit recommended as "sell as last resort" by the Fish and Wildlife Service; 2) recommendations of the advisory boards that the Forest Service has adopted; 3) concerns for

roadless areas being addressed in the new planning process; and 4) lawsuits and appeals. In the judgment of the Forest Service the decision not to sell this timber is mandated by the requirements of other laws and regulations and the proper implementation of the Section 318 in its entirety.

Mandamus under Section 1361 is only proper when an agency is failing or refusing to do an act which is so plainly prescribed as to be free from doubt, and the entitlement of the plaintiff is clear and certain. The record before this court shows that the Forest Service has made and is making every reasonable effort to comply with its continuing duty to offer 7.7 BBF of timber for sale on or before September 30, 1990 from the national forests of the States of Oregon and Washington. The prediction of the Forest Service that it will not be able to meet the level of sale of timber set by Congress does not allow the court to order the Forest Service to sell timber which the agency has determined to be inconsistent with the requirements of its duty under the law. The Forest Service's determination that it cannot meet the 7.7 BBF timber sales level and at the same time meet the requirements of all of the provisions of Section 318 and all other applicable laws is entitled to deference at this point in time.

Plaintiffs' motion for summary judgment (# 5) is denied. Defendants' motion for summary judgment (# ) is granted. Judgment shall be entered for defendants.