**GIFFORD PINCHOT ALLIANCE, SDS Lumber Co., Southern Oregon Timber Industries Association, and Northwest Forest Resource Council, Plaintiffs,**

v.

**John F. BUTRUILLE, in his official capacity as Regional Forester, U.S.D.A., Forest Service, and F. Dale Robertson, in his official capacity as Chief, U.S. D.A., Forest Service, Defendants.**

**CV No. 90–960–PA.**

United States District Court,
D. Oregon.

Dec. 10, 1990.

Mark Rutzick, Cynthia L. Hull, Preston, Thorgrimson, Shidler, Gates & Ellis, Portland, Or., for plaintiffs.

Maria Iizuka, Atty., U.S. Dept. of Justice, Environmental and Natural Resources Div., Sacramento, Cal., Val J. McLam-Black, Sp. Asst. U.S. Atty., Office of General Counsel, U.S. Dept. of Agr., Portland, Or., for defendants.

Victor Sher, Todd True, Corrie J. Yackulic, Sierra Club Legal Defense Fund, Seattle, Wash., Derek C. Johnson, Johnson, Clifton, Larson & Bolin, Eugene, Or., for amicus curiae Gifford Pinchot Task Force and Headwaters.

## OPINION

PANNER, District Judge.

Plaintiffs Gifford Pinchot Alliance, Southern Oregon Timber Industries Association, and Northwest Forest Resource Council are associations of forest products companies which seek an order compelling defendants, John F. Butruille, Regional Forester of the Pacific Northwest Region of the United States Forest Service, and F. Dale Robertson, Chief of the United States Forest Service ("the Forest Service"), to sell timber from Oregon and Washington National Forests pursuant to section 318, Department of the Interior and Related Agencies Appropriations Act, Fiscal Year ("FY") 1990, Pub.L. No. 101–121, 103 Stat. 745 (1989) ("Section 318"). Both parties move for summary judgment. I deny plaintiffs' motion. I grant the Forest Service's motion.

## BACKGROUND

Section 318 provided a FY 1990 timber harvest level of 7.7 billion board feet ("bbf") and required the Forest Service to comply with numerous other environmental provisions. Section 318 expired on September 30, 1990.

In a previous action filed by plaintiffs earlier this year, Judge Helen Frye granted the Forest Service's motion to dismiss. *Gifford Pinchot Alliance v. Butruille*, 742 F.Supp. 1077 (D.Or.1990) ("*GPA I*"). Judge Frye found that the Forest Service was making a reasonable effort to comply with its continuing duty to sell timber under section 318. *Id.* at 1083. She held that the court could not order timber sales that the Forest Service determined would be inconsistent with other section 318 requirements. *Id.*

After Judge Frye's decision, plaintiffs filed the present action. Instead of seeking a writ of mandamus as they did in the prior case, they now invoke the Administrative Procedures Act and contend that the Forest Service unlawfully withheld or unreasonably delayed mandatory agency action. Plaintiffs argue that Congress's use of the word "shall" in section 318(a)(1),

required the Forest Service to sell 7.7 bbf by September 30, 1990. Because the Forest Service sold only 7.333 bbf, plaintiffs ask the court to compel the Forest Service to continue selling timber until the 7.7 bbf level is met.

## STANDARDS

Summary judgment is appropriate if the pleadings and supporting materials show no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Evidence and the inferences therefrom must be viewed in a light most favorable to the nonmoving party. *T.W. Elec. Serv. v. Pacific Elec. Contractors*, 809 F.2d 626, 630–31 (9th Cir.1987). That is, if a rational trier of fact might resolve the issue in favor of the nonmoving party, summary judgment must be denied. *Id.* An issue is material if it is relevant to the law governing the claim or defense. *Id.* A dispute is genuine if a reasonable jury viewing the evidence could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

If the moving party shows the absence of fact, the nonmoving party must go beyond the pleadings and designate specific facts showing a genuine issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). If the nonmoving party's claim is implausible, it must come forward with more persuasive evidence than otherwise would be necessary to show that a genuine issue exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). If the adverse party does not respond, summary judgment, if appropriate, shall be entered against that party. Fed.R.Civ.P. 56(e).

## DISCUSSION

I. *The Forest Service's Duty Under Section 318.*

This court may compel agency action unlawfully withheld or unreasonably delayed. 5 U.S.C. § 706(1). During FY

1990, section 318 governed the Forest Service's actions regarding potential Oregon and Washington timber sales. Subsection (a)(1) specified a timber sale level of 7.7 bbf. Section 318 also required the Forest Service to comply with land and management plans, to proportionally distribute sales among forests known to contain northern spotted owls, to minimize old growth fragmentation, and to consult with the Fish and Wildlife Service ("FWS") and other advisory boards when selecting timber to sell.

A. Statutory Construction of Section 318

■ To interpret section 318(a)(1), this court must ascertain the intent of Congress and give effect to legislative will. *Turner v. McMahon*, 830 F.2d 1003, 1007 (9th Cir. 1987), *cert. denied*, 488 U.S. 818, 109 S.Ct. 59, 102 L.Ed.2d 37 (1988). "The most persuasive evidence of [congressional] intent is the words selected by Congress." *Id.* (quoting *Foxgord v. Hischemoeller*, 820 F.2d 1030, 1032 (9th Cir.), *cert. denied*, 484 U.S. 986, 108 S.Ct. 503, 98 L.Ed.2d 502 (1987)). However, "there is no errorless test for identifying or recognizing 'plain' or 'unambiguous' language". *United States v. Turkette*, 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1980). Even unambiguous language may not be conclusive if Congress has expressed a contrary legislative intent. *Turkette*, 452 U.S. at 580, 101 S.Ct. at 2527; *City of Edmonds v. United States Dept. of Labor*, 749 F.2d 1419, 1421 (9th Cir.1984). Finally, "whenever possible[,] statutes are to be given such effect that no clause, sentence or word is rendered superfluous, void, contradictory or insignificant." *Rockbridge v. Lincoln*, 449 F.2d 567, 571 (9th Cir.1971) (citing *Richards v. United States*, 369 U.S. 1, 11, 82 S.Ct. 585, 591, 7 L.Ed.2d 492 (1962)).

Section 318(a)(1) states

[t]he Forest Service *shall offer*, notwithstanding the provisions of the Federal Timber Contract Payment Modification Act of 1984 (16 U.S.C. 618(a)(5)(C)), an *aggregate timber sale level of seven billion seven hundred million board feet of net merchantable timber* from the national forests of Oregon and Washington for fiscal years 1989 and 1990. Such *timber sales shall be consistent with existing land and resource management plans.... [and] such sales shall be consistent with the preferred alternative of the draft land and resource management plan and accompanying draft environmental impact statement dated October 1, 1986.... Provided further*, that the sales *volume shall be distributed in the same proportion between Oregon and Washington national forests known to contain northern spotted owls* based on the average sale volume for fiscal years 1986 through 1988.

103 Stat. at 745 (emphasis added).

Plaintiffs argue that section 318(a)(1) mandates the Forest Service to sell 7.7 bbf of timber. They rely on the plain meaning of the phrase *"shall offer ... an aggregate timber sale level of seven billion seven hundred million board feet of net merchantable timber."* Plaintiffs contend that section 318's provisions insulating timber sales and section 318's legislative history, reveal Congress's intent to stabilize and provide a predictable flow of timber for FY 1990. Plaintiffs also suggest that a new appropriations act indicates that Congress intended the 7.7 bbf level to be read as a numerical mandate because it directs the Forest Service to continue selling unsold section 318 timber during FY 1991. Department of Interior and Related Agencies Appropriations Act for Fiscal Year 1991, Pub.L. No. 101–512 (Nov. 12, 1990) ("1991 Act").

The Forest Service contends that plaintiffs' interpretation renders section 318's environmental protection provisions superfluous and its September deadline nugatory. The Forest Service argues that Congress did not mandate it to sell precisely 7.7 bbf of timber. It notes that this court has already described the 7.7 bbf level as "a mark" rather than a mandate. *GPA I*, 742 F.Supp. at 1081. It points to the dual legislative intent to ensure a predictable timber flow *and* preserve old growth for-

est stands as the habitat of the northern spotted owl.

The Forest Service argues that as a compromise measure, Congress intended to meet both industry and environmental needs. Additionally, the Forest Service maintains that the 1991 Act's express language, requiring the Forest Service to sell unsold section 318 timber in addition to FY 1991 timber "to the extent possible," reveals Congress's intent that the Forest Service need only sell timber under section 318 "to the extent possible."

### (1) *Plain meaning*

The plain meaning of any word is not always clear. *See Turkette,* 452 U.S. at 580, 101 S.Ct. at 2527. However, assuming the word "shall" suggests mandatory action, when read in context, the entire subsection (a)(1) becomes ambiguous.

If the 7.7 bbf level is a numerical mandate, then other provisions in section 318 containing the word "shall" should also be read as a mandate. If section 318's numerical provisions and its provisions concerning environmental protections are consistently read as mandates, the Forest Service could not comply with the entire statute. For example, to comply with the 7.7 bbf harvest level, the Forest Service states it would have to violate other section 318 requirements such as minimizing old growth fragmentation. Congress did not prioritize section 318's provisions. Reading "shall" as a mandate renders section 318's clauses contradictory. It is unlikely that Congress intended the Forest Service to violate some provisions to meet others. Thus, the plain meaning of "shall" is ambiguous.

### (2) *Legislative intent*

Legislative history indicates that when it set the 7.7 bbf level, Congress intended to push through as many timber sales as it could in FY 1990. H.R.Conf.Rep. No. 264, 101st Cong., 1st Sess. (1989) ("Conf.Rep. No. 264"). Yet, it is also clear that section 318 was a compromise measure. Congress enacted it to appease and meet the needs of both timber and environmental interests. Conf.Rep. No. 264 at 87; *see GPA I,* 742 F.Supp. at 1079.

The 7.7 bbf target Congress established in section 318(a)(1) was a direct response to the general injunction issued in *Seattle Audubon Soc'y v. Robertson,* Civil No. 89–160 (W.D.Wash., May 11, 1990). *Id.* That injunction stopped the sale of 6.9 million board feet of timber and caused the Forest Service to fall short of its FY 1989 target. *Id.* Congress then established a compensatory 7.7 bbf timber sale volume for FY 1990. Under section 318, Congress intended to hold the Forest Service responsible for a continuing effort. *Cf. id.* at 1083 (finding that the Forest Service was making every reasonable effort to comply with *its continuing duty to offer 7.7 bbf of timber for sale*) (emphasis added); Conf. Rep. No. 264 at 87 ("[w]hile *it may be difficult* to prepare substantial new sale volumes, the managers *encourage the Forest Service to make every possible effort* to prepare and offer new sales as part of the fiscal year 1990 program") (emphasis added).

Congress recognized the need to protect certain environmental interests. It required the Forest Service to evaluate and select only those timber sales that met other environmental directives. Section 318, 103 Stat. at 745–50. Congress intended that the Forest Service make every reasonable effort to comply with these environmental protections as well as the increased sale level.

This interpretation of section 318(a)(1) is supported by the 1991 Act. Congress has established a FY 1991 timber sale volume and has expressly provided that any remaining unsold FY 1990 timber sales "shall be offered for sale during FY 1991." 1991 Act, Pub.L. No. 101–512. The 1991 Act also states that the Forest Service shall sell timber, "to the extent possible." *Id.* With this language, Congress has recognized that the Forest Service has a difficult task in meeting its duty and has given the Forest Service discretion to determine to what extent it is possible to offer unsold FY 1990 timber for sale in FY 1991.

A contextual reading of section 318(a)(1) in conjunction with its legislative history,

and the 1991 Act's express language, indicate that "shall" does not create mandatory action requiring the Forest Service to sell exactly 7.7 bbf of timber. Legislative intent to meet both timber industry and environmental needs is present in section 318(a)(1). Thus, the Forest Service was required only to sell as much of the 7.7 bbf it deemed possible given section 318's environmental requirements.

### B. The Forest Service's Actions Under Section 318

■ The Forest Service contends that it did not violate its duty under section 318(a)(1) because it did not refuse to sell timber. In fact, it sold 7.333 bbf, 95% of the 7.7 bbf target. Defendant's Memorandum in Support of its Motion for Summary Judgment and Opposing Plaintiffs' Motion for Summary Judgment at 4.

The Forest Service relies on findings in *GPA I* recognizing the difficulties facing it in meeting section 318's requirements. In summary, *GPA I* findings, primarily supported by Butruille's Declaration, are: (1) section 318(a) constrains the Forest Service's flexibility by requiring a proportional dispersal of sales between forests known to contain northern spotted owls; (2) the Forest Service was required to minimize fragmentation of old growth forest stands; (3) section 318 imposed a duty on the Forest Service to confer and consult with the FWS, which modified and deleted many timber sales; (4) when the spotted owl was added to the Endangered Species List, many timber offers had to be removed from sale status; (5) section 318 created advisory boards which often proposed adjustments to timber sales requiring field checking; and (6) section 318 allows both administrative appeals to timber sales and litigation to challenge these sales requiring the Forest Service to expend time in activities other than preparing timber volumes for sale. *See generally GPA I*, 742 F.Supp. at 1080–81. Butruille repeatedly stated that the Forest Service is "trying [its] best to [meet the 7.7 bbf target]". Declaration of John F. Butruille at 13 (filed in conjunction with Defendant's Memorandum Supporting its Motion for Summary

Judgment and Opposing Plaintiffs' Motion for Summary Judgment, *GPA I*, 742 F.Supp. 1077).

The Forest Service did not refuse to sell timber. Rather, it attempted to comply with all of section 318's potentially conflicting demands. The Forest Service sold timber to the extent it deemed possible and did not unlawfully withhold or delay agency action in disregard of its duty under section 318.

### II. *The Forest Service's Continuing Duty Under the New Appropriations Act*

■ The new FY 1991 Act requires the Forest Service to sell any unsold timber volumes allotted for sale under section 318, to the extent possible, during FY 1991. 1991 Act, Pub.L. No. 101–512. Inasmuch as this is precisely how I have construed section 318, plaintiffs' action as originally filed is moot. However, plaintiffs additionally argue that any timber which was part of the volume allotted for sale under section 318, but sold under the 1991 Act, carries the special protective provisions provided in section 318. I disagree.

### A. Statutory Construction of Pub.L. No. 101–512

By its own terms, section 318 expired on September 30, 1990. Section 318(k), 103 Stat. at 750; *see* Conf.Rep. No. 264 at 87 ("the managers have limited all provisions in this subsection to fiscal year 1990.... Sales offered under this section ... may not be reoffered in subsequent fiscal years under the terms of this section"). In the absence of express language continuing section 318, I may not revive the expired statute. *See, e.g., Chiles v. Thornburgh*, 865 F.2d 1197, 1203–04 (11th Cir.1989).

The new law does not expressly continue any of section 318's provisions. It only requires the Forest Service to continue selling unsold section 318 timber volumes during FY 1991. Section 318 timber volumes offered for sale under the 1991 Act do not carry section 318 protections.

**973**

### CONCLUSION

I deny plaintiffs' motion for summary judgment. I grant the Forest Service's motion for summary judgment.