931 F.2d 590
 21 Envtl. L. Rep. 21,040
 SEATTLE AUDUBON SOCIETY; Pilchuck Audubon Society;
Washington Environmental Council; Washington Native Plants
Society; Oregon Natural Resources Council, Inc.; Portland
Audubon Society; Lane County Audubon Society, Plaintiffs-Appellants,
Washington Contract Loggers Association; William Pickell,
Plaintiffs-Appellees,
v.
F. Dale ROBERTSON, in his official capacity as Chief, United
States Forest Service; United States Forest
Service, an agency of the United States,
Defendants-Appellees.
 No. 90-35774.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Feb. 11, 1991.
Decided April 26, 1991.
 
 Todd D. True, Sierra Club Legal Defense Fund, Seattle, Wash., for plaintiffs-appellants, Seattle Audubon Society, et al.
 Mark C. Rutzick, Preston, Thorgrimson, Ellis & Holman, Portland, Or., for plaintiffs-appellees, Washington Contract Loggers Ass'n.
 Anne S. Almy, U.S. Dept. of Justice, Washington, D.C., for defendants-appellees, F. Dale Robertson and U.S. Forest Service.
 Appeal from the United States District Court for the Western District of Washington.
 Before GOODWIN, SCHROEDER and PREGERSON, Circuit Judges.
 OPINION
 PREGERSON, Circuit Judge:
 
 
 1
 We have before us once again the controversy over logging of the old growth forests of the Pacific Northwest and the impact of the logging on the northern spotted owl. Today's dispute is a consequence of our recent decision in this very case, which we filed on September 18, 1990, and amended on October 30. See Seattle Audubon Society v. Robertson, 914 F.2d 1311 (9th Cir.1990). We held that Congress violated the separation of powers doctrine when it enacted section 318 of the Department of the Interior and Related Agencies Appropriations Act for Fiscal Year 1990, Pub.L. No. 101-121, 103 Stat. 701, 745-50 (1989) ("Section 318").[1] A few days after our mandate issued, Seattle Audubon Society and other plaintiff organizations challenged the United States Forest Service's decision to allow logging on six tracts of old growth forest. The district court held that these six challenges were untimely. We reverse.
 
 I.
 
 2
 The logging of old growth forests poses a grave danger to the continued survival of the northern spotted owl. This litigation began as a challenge to the Forest Service's 1988 administrative decision to continue logging in the thirteen national forests of Oregon and Washington where spotted owls still survive. The decision was set out in a December 8, 1988 Record of Decision (ROD) signed by the Chief of the United States Forest Service, and in an accompanying Final Supplement to the Environmental Impact Statement for an Amendment to the Northwest Regional Guide. Although the plan did not authorize logging in designated Spotted Owl Habitat Areas, the plaintiffs contend the plan's protections are wholly inadequate and are based on a flawed evaluation of the danger that continued logging poses to the owl's habitat. In early 1989, the plaintiffs filed suit in United States District Court in Seattle and asked for declaratory and injunctive relief. The complaint alleged that by adopting the plan, the Forest Service violated the National Environmental Policy Act (NEPA), the National Forest Management Act (NFMA), and the Migratory Bird Treaty Act (MBTA).[2]
 
 
 3
 The Washington Contract Loggers Association also challenged the Forest Service's plan in the United States District Court in Seattle. It contended that the plan did not permit enough logging. The district court denied the loggers' motion for a preliminary injunction and consolidated their case with the litigation filed by Seattle Audubon Society.[3]
 
 
 4
 In March 1989, the district court granted Seattle Audubon's motion for a preliminary injunction against 163 specified timber sales. In May 1989, the court preliminarily enjoined all sales of timber that comprised more than forty acres of old-growth forest.
 
 
 5
 With this injunction against significant sales of the Forest Service's old-growth forest in place, and with a similar lawsuit on behalf of the spotted owl pending against the Bureau of Land Management in United States District Court in Portland,[4] ] Congress took action. In enacting section 318, "The Northwest Timber Compromise of 1989," Congress declared that it attempted to balance the goals of ensuring a predictable supply of timber, protecting the northern spotted owl, and preserving significant stands of old-growth forest. H.R.Conf.Rep. No. 264, 101st Cong., 1st Sess. 87 (1989). Congress enacted section 318 as a temporary measure to govern the old-growth forests until the end of the fiscal year, September 30, 1990. Section 318(a)(1) required that the Forest Service offer 7.7 billion board feet of timber for sale from the national forests of Oregon and Washington, with 5.8 billion board feet to come from the thirteen national forests that contain northern spotted owls.[5] In subsection (b)(3), the Act provided that no logging would be permitted in areas designated as Spotted Owl Habitat Areas (SOHAs) in the Forest Service plan adopted in 1988. Subsection (b)(3) also increased the size of several specified SOHAs, thus setting aside additional acreage where logging would be banned. Subsection (b)(3)(F) referred to the 1988 forest management plan and provided that "[a]ll other standards and guidelines contained in the Chief's Record of Decision are adopted."
 
 
 6
 Section 318 included some substantive and procedural criteria to guide the Forest Service in selecting areas of the forest for logging. For example, subsection (b)(1) instructed the Forest Service to minimize fragmentation of ecologically significant old growth forest that contains northern spotted owls. It also provided that location of proposed timber sales would be reviewed by advisory panels of local citizens with diverse views, and it required the Forest Service to consider the input provided by these citizen groups.
 
 
 7
 In subsection (g), section 318 provided for expedited judicial review of administrative decisions to offer particular tracts of timber for sale. It required that challenges to a timber sale be filed in district court within fifteen days of its advertisement. It further provided that courts could not temporarily restrain or preliminarily enjoin administrators from carrying out decisions made during fiscal year 1990 to sell timber in forests inhabited by spotted owls. Courts retained, however, the power to permanently enjoin, modify, or void a proposed timber sale that was arbitrary, capricious, or otherwise not in accord with the law. Subsection (g) further provided that challenges to timber sales would take priority on the calendars of district courts, which were required to rule on the merits within forty-five days, unless the Constitution required more time.
 
 
 8
 The focus of our recent decision was subsection (b)(6)(A), where Congress attempted to overrule the preliminary injunction issued by the district court judge in this case. In subsection (b)(6)(A), Congress identified this lawsuit by its case name and its docket number in the district court. Congress declared that management of Forest Service land in accordance with the guidelines of subsection (b)(3) adequately satisfied the requirements of the statutes on which the plaintiffs based their complaint.[6]
 
 
 9
 Section 318 became law on October 23, 1989. On November 6, the district court concluded that subsection (b)(6)(A) required that it vacate its preliminary injunction. It ruled that Congress had temporarily suspended, during fiscal year 1990, the environmental laws that the plaintiffs invoke in this litigation. The district court did not dismiss the case but retained jurisdiction, expecting the controversy to resume after the end of fiscal year 1990.[7]
 
 
 10
 On appeal, we reversed and held that courts cannot give effect to the first sentence of subsection (b)(6)(A). We explained that Congress violated the separation of powers doctrine by attempting to dictate to the judiciary how to decide the outcome of a pending case. We acknowledged that Congress has the power to affect the outcome of a pending case by amending the legislation upon which the litigants rely. We concluded, however, that Congress had not amended the National Environmental Policy Act, the National Forest Management Act, or the Migratory Bird Treaty Act. Because those statutes were still in place, it was the job of the judiciary, not the Congress, to determine whether the actions of the Forest Service complied with those statutes. See Seattle Audubon Society v. Robertson, 914 F.2d 1311 (9th Cir.1990). Our mandate issued on September 24, 1990.
 
 
 11
 Within three days, the plaintiffs challenged six timber sales as violating provisions of the National Environmental Policy Act, the National Forest Management Act, and the Migratory Bird Treaty Act. They asked for a permanent injunction. The plaintiffs acknowledged that their challenges were not filed within fifteen days of the initial advertisement of the timber sales, as required by subsection (g) of section 318. Without disputing the general applicability of the 15-day limitations period, plaintiffs argued that the doctrine of equitable tolling should excuse their late challenges. They argued that the limitations period should be tolled during the time that their challenge to the constitutionality of subsection (b)(6)(A) was pending before this court. The district court ruled that the doctrine of equitable tolling did not apply to the 15-day limitations period of subsection (g). It further ruled that even if the limitations period could be equitably tolled, the plaintiffs were not entitled to the benefits of the doctrine in this case. We have jurisdiction over this timely interlocutory appeal under 28 U.S.C. Sec. 1292(a)(1) (1988).
 
 II.
 
 12
 Plaintiffs do not challenge the applicability of the fifteen-day limitations period. For the purposes of this appeal, we therefore assume, without decding, that this limitations period ordinarily governs challenges to Fiscal Year 1990 timber sales that are based on the National Environmental Policy Act, the National Forest Management Act, and the Migratory Bird Treaty Act.[8] The question before us is whether the doctrine of equitable tolling applies to the fifteen-day limitations period. Because we answer that question in the affirmative, the next question is whether the limitations period should be tolled in this particular case. Ordinarily, that is a question for the district court in the first instance. We reach that question today, however, because the district court has already considered it in its alternative holding.
 
 A.
 
 13
 When the district court ruled that the principles of equitable tolling did not apply, it did not have the benefit of the Supreme Court's recent decision in Irwin v. Veterans Administration, --- U.S. ----, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990). Irwin simplifies the first stage of our inquiry. The Court held that whenever Congress waives the government's sovereign immunity and permits suit against the government, there is a rebuttable presumption that the doctrine of equitable tolling applies. Id. 111 S.Ct. at 457.
 
 
 14
 There is nothing in the text of section 318 itself to rebut the presumption that equitable tolling applies to the fifteen-day period. Nor do we find that permitting equitable tolling in appropriate cases would be inconsistent with the purposes of section 318. Congress clearly intended to preserve the opportunity for judicial review of timber sales offered during the fiscal year. Congress directed the Forest Service to harvest a specified quantity of timber, but it did not authorize the agency to fulfill its mission arbitrarily, capriciously, or otherwise in violation of law. Equitable tolling is completely consistent with the goal of a legal timber harvest. Congress also intended that court challenges be completed quickly, and it therefore provided for expedited procedures. Although permitting equitable tolling may sometimes interfere with the goal of expedition, it may advance Congress's goal of ensuring that timber sales comply with the law. We cannot conclude that Congress's preference for proceeding with dispatch overrides its goal of preserving the usual opportunity to assure that timber harvesting complies with all applicable law. We therefore conclude that the fifteen-day limitations period is subject to equitable tolling in an appropriate case.
 
 B.
 
 15
 Federal courts have applied the doctrine of equitable tolling in two generally distinct kinds of situations. In the first, the plaintiffs were prevented from asserting their claims by some kind of wrongful conduct on the part of the defendant. In the second, extraordinary circumstances beyond plaintiffs' control made it impossible to file the claims on time. An excellent discussion of the application of these principles of equitable tolling can be found in Forti v. Suarez-Mason, 672 F.Supp. 1531, 1549-50 (N.D.Cal.1987).
 
 
 16
 Plaintiffs argue that extraordinary circumstances beyond their control prevented them from challenging these timber sales within fifteen days of their advertisement for sale. The extraordinary circumstances, they contend, were that an unconstitutional statute, subsection (b)(6)(A), and the district court's erroneous upholding of that statute, barred them from filing the claims they now seek to litigate. They argue that the limitations period was equitably tolled until we reversed the district court by holding that subsection (b)(6)(A) was unconstitutional.
 
 
 17
 Courts have held that when external forces, rather than plaintiff's lack of diligence, account for the failure to file a timely claim, equitable tolling is proper. When courts have actually been closed by conditions of war, statutes of limitations are equitably tolled. See Hanger v. Abbott, 73 U.S. (6 Wall.) 532, 18 L.Ed. 939 (1867) (courts in southern states closed during Civil War). Similarly, when war prevents a plaintiff from gaining access to a court that has remained open, the principles of equitable tolling apply. See Osbourne v. United States, 164 F.2d 767 (2d Cir.1947) (plaintiff held in Japan during the Second World War unable to file his claim in court). In Osbourne, the court explained:
 
 
 18
 All statutes of limitations are based on the assumption that one with a good cause of action will not delay in bringing it for an unreasonable period of time; but, when a plaintiff has been denied access to the courts, the basis of the assumption has been destroyed.
 
 
 19
 Id. at 769, quoted in Forti v. Suarez-Mason, 672 F.Supp. at 1550. Even when physical access to a functioning court is possible, equitable tolling may nevertheless be proper if there is no real possibility of gaining relief in court. See Suarez-Mason, 672 F.Supp. at 1550.
 
 
 20
 Plaintiffs rely on Osbourne and argue that until our decision of September 18, 1990, they were effectively denied access to the courts by circumstances beyond their control. They contend that they were barred from bringing their claims by the unconstitutional enactment of subsection (b)(6)(A) and the district court's erroneous enforcement of it. Under the district court's ruling of November, 1989, the plaintiffs had no claims under the National Environmental Policy Act, the National Forest Management Act, or the Migratory Bird Treaty Act. The court ruled, erroneously, that Congress had amended these statutes to excuse the very violations of law that plaintiffs sought to redress.
 
 
 21
 Plaintiffs diligently appealed that ruling. Within a few months, while that appeal was still pending, the district court reiterated its position when ruling on a separate motion. On January 30, 1990, the court declared that during fiscal year 1990, it would test the legality of Forest Service actions in the national forests containing spotted owls solely by the provisions of section 318. Any claims based on the National Environmental Policy Act, the Migratory Bird Treaty Act, or the National Forest Management Act would be dismissed on the court's own motion, without requiring the defendants to file briefs.
 
 
 22
 After the court's order of January 30, plaintiffs filed challenges to some Fiscal Year 1990 timber sales on the grounds that they violated provisions of section 318. For example, plaintiffs challenged some sales on the grounds that the Forest Service failed to minimize fragmentation of ecologically significant old-growth forest, in violation of 318(b)(1). The plaintiffs did not, however, base any challenges on the National Environmental Policy Act, the National Forest Management Act, or the Migratory Bird Treaty Act until after our decision of September 18, 1990. Our mandate in that case issued on September 24, and within three days the plaintiffs filed the challenges before us today.
 
 
 23
 The defendants contend that plaintiffs were not denied access to the courts. They maintain that nothing barred challenges based on NEPA, NFMA, or the MBTA except the plaintiffs' lack of diligence. The fact that the statute purported to remove the legal grounds for plaintiffs' challenges, defendants contend, merely shows that plaintiffs risked losing any challenges they might file. Defendants contend that the prospect that a lawsuit will be unsuccessful does not merit tolling of the statute of limitations. Defendants apparently contend that the plaintiffs could be regarded as diligent only if, while their appeal was pending in this court, they had separately challenged each timber sale in the district court within the fifteen-day limitations period, notwithstanding the district court's warning that such challenges would be summarily dismissed.
 
 
 24
 In light of the purposes of statutes of limitations and the particular circumstances of this unusual case, we cannot say that the plaintiffs were not diligent. At all times, the defendants were on notice of the plaintiffs' claims that subsection (b)(6)(A) was unconstitutional and that the plans for logging violated NEPA, NFMA, and the MBTA. The plaintiffs were diligently pursuing their challenge to the constitutionality of (b)(6)(A) in the appellate court. Under the procedures the district court announced at the time it upheld subsection (b)(6)(A), any challenges to individual timber sales would be filed as motions for partial summary judgment. See supra note 7. We do not accept defendants' contention that, while that appeal was pending, plaintiffs slept on their rights by failing to file a separate motion for summary judgment each time they believed a timber sale violated the three statutes that the district court erroneously believed had been temporarily repealed. The district court's view that subsection (b)(6)(A) was constitutional was already the law of the case. It was clear that the district court would have dismissed each separate motion.
 
 
 25
 The logical corollary of defendants' overly strict view would further hold that plaintiffs could have diligently preserved their rights only by separately appealing each dismissal of a challenge. We do not believe that the equitable principles that govern tolling would require such a waste of judicial resources. Plaintiffs should not have to file multiple appeals raising the same legal issue against the same defendants in the same case. Under the circumstances, we agree that the unconstitutional statute and the district court's erroneous interpretation of it barred these otherwise diligent plaintiffs from raising the claims they now seek to litigate. We conclude that they meet the threshold requirements for equitable tolling.
 
 
 26
 We also conclude that the defendants will not be unjustly prejudiced by tolling the statute of limitations. This is certainly not a case in which they will be forced to defend a stale claim. Memories have not faded. Witnesses have not disappeared. Documents are accessible. The defendants can argue that they were prejudiced only if they relied to their detriment on the fact that no challenge was filed within the fifteen-day limitations period. The loggers argue that the expedited process of subsection (g) allowed buyers of timber to be "certain" that a sale unchallenged after fifteen days was "immune" from litigation. We disagree. The buyers of timber did not sign contracts with any such expectation of immunity. A recision clause permits the government to terminate the contracts to comply with a court order, even if the particular sale is not named in that order. The timber buyers knew that the plaintiffs were vigorously contesting the Forest Service's logging plans on a number of legal fronts, including the appeal that resulted in our decision of September 18, 1990. We do not believe that any buyers of timber reasonably relied on a belief that the expiration of the fifteen-day period rendered the sales immune from challenge. We therefore conclude that equitable tolling would not unjustly prejudice the Washington Contract Loggers Association.
 
 
 27
 The Forest Service argues that equitable tolling would prejudice its efforts to meet the timber harvest quota that Congress set for Fiscal Year 1990. Because the fiscal year has already expired, the Forest Service will be unable to substitute other unsold tracts for any sales that the plaintiffs might successfully challenge. We conclude, however, that any prejudice to the Forest Service's efforts cannot be traced to a decision to toll the limitations period. The Forest Service failed to fulfill the timber quota set by section 318. See Gifford Pinchot Alliance v. Butruille, 752 F.Supp. 967, 972 (D.Or.1990). Because the agency was trying its best to fulfill the Congressional directive to offer 7.7 billion board feet for sale, id., we can conclude that any unsold tracts of timber that could have been prepared for sale in fiscal year 1990 were indeed prepared and offered for sale. The Forest Service could not have substituted other tracts for the ones challenged here. Thus, the Forest Service did not rely to its detriment on the fact that these particular sales were not challenged within the fifteen-day limitations period. The Forest Service's "prejudice" argument is really an argument that the environmental statutes themselves--not our decision to toll--interfere with the agency's efforts to meet the timber harvest quota.
 
 
 28
 We conclude that the plaintiffs in this case did not sleep on their rights. Their diligent efforts to litigate their claims were blocked in the district court until we declared subsection (b)(6)(A) unconstitutional and explained that nothing in section 318 amended the environmental statutes upon which plaintiffs rely. Equitable tolling in this case will not interfere with the purposes of limitations periods and will not cause unjust prejudice to the defendants. We therefore conclude that the plaintiffs' challenges to the six timber sales can proceed.
 
 III.
 
 29
 In a footnote in their reply brief, plaintiffs suggest that a ruling in their favor will also function to equitably toll the remainder of the fifteen-day period during the entire time this appeal has been pending before us.[9] We disagree. The district court should have the first opportunity to consider whether equitable tolling is proper in a given case, and it has had no opportunity to consider whether the remainder of the fifteen-day period should be tolled during the pendency of this appeal. The reasoning of today's opinion does not automatically determine whether the limitations period should be tolled during the time this appeal has been pending. The issues are different. For example, plaintiffs cannot argue that an unconstitutional statute barred new challenges to timber sales during the entire time this appeal has been before us.[10] Moreover, we do not believe that a footnote in a reply brief properly raised the issue whether the limitations period should be tolled while this appeal is pending. Today's decision, therefore, holds only that the doctrine of equitable tolling permits the plaintiffs to challenge the six timber sales involved in this appeal.
 
 IV.
 
 30
 The order of the district court is vacated, and this case is remanded for further proceedings. The parties will pay their own costs. The mandate shall issue immediately.
 
 
 
 [1]
 More specifically, we held that the first sentence of subsection (b)(6)(A) violated the Constitution. 914 F.2d at 1317
 
 
 [2]
 Plaintiffs contend that the plan violates the National Environmental Policy Act, 42 U.S.C. Secs. 4321-4347 (1988), by failing to consider adequately how the planned logging would affect the spotted owl. It allegedly violates the National Forest Management Act, 16 U.S.C. Secs. 1600-1614 (1988), by failing to assure that a viable population of northern spotted owls will be maintained. Finally, the plaintiffs contend that the plan violates the Migratory Bird Treaty Act, 16 U.S.C. Secs. 703-711 (1988), by allowing harm to the owls or their habitat
 
 
 [3]
 In this appeal, the loggers defend the decision of the district court, and we therefore regard them as defendants
 
 
 [4]
 The Portland Audubon Society and other environmentalist and conservationist organizations, some of which are also plaintiffs in the case before us today, sued in Portland to protect the northern spotted owl on land administered by the Bureau of Land Management. That lawsuit, filed in 1987, had been before us two separate times at the time Congress passed Section 318, the legislation that we must interpret again today. See Portland Audubon Society v. Hodel, 866 F.2d 302 (9th Cir.), cert. denied, 492 U.S. 911, 109 S.Ct. 3229, 106 L.Ed.2d 577 (1989); Portland Audubon Society v. Lujan, 884 F.2d 1233 (9th Cir.1989), cert. denied, --- U.S. ----, 110 S.Ct. 1470, 108 L.Ed.2d 608 (1990). When the Portland case was before us a third time in 1990, we consolidated it with the Seattle litigation and issued the ruling on section 318 that we follow up on today. See Seattle Audubon Society v. Robertson, 914 F.2d 1311 (9th Cir.1990)
 
 
 [5]
 Section 318(a)(2) set a timber sales quota for the Bureau of Land Management. In this opinion, we discuss only the provisions of section 318 that apply to the Forest Service and the litigation challenging its management of the old-growth forests
 
 
 [6]
 Subsection (b)(6)(A) referred generally to the statutes upon which the plaintiffs relied without specifically mentioning the National Environmental Policy Act, the National Forest Management Act, or the Migratory Bird Treaty Act. The portion of subsection (b)(6)(A) relevant to the Seattle litigation provided:
 Without passing on the legal and factual adequacy of the Final Supplement to the Environmental Impact Statement for an Amendment to the Pacific Northwest Regional Guide--Spotted Owl Guidelines and the accompanying Record of Decision issued by the Forest Service on December 8, 1988 ..., the Congress hereby determines and directs that management of areas according to subsection [ ] (b)(3) ... of this section on the thirteen national forests in Oregon and Washington ... known to contain northern spotted owls is adequate consideration for the purpose of meeting the statutory requirements that are the basis for the consolidated cases captioned Seattle Audubon Society et al., v. F. Dale Robertson, Civil No. 89-160 and Washington Contract Loggers Assoc. et al., v. F. Dale Robertson, Civil No. 89-99 (order granting preliminary injunction)....
 Pub.L. 101-121, Sec. 318(b)(6)(A), 103 Stat. 701, 747 (1989).
 
 
 [7]
 The court noted that subsection 318(g) provided for expedited review of decisions to offer particular timber sales. The court announced that the parties could challenge particular sales under subsection (g) by filing motions instead of initiating new lawsuits. Accordingly, when Seattle Audubon alleged that particular Fiscal Year 1990 timber sales violated the nonfragmentation provisions of section 318, it proceeded by filing motions for partial summary judgment in this already pending case. Similarly, the challenge to the six sales before us today was initiated by a motion for partial summary judgment
 
 
 [8]
 Congress clearly intended the fifteen-day limitations period to apply to challenges that asserted that a Fiscal Year 1990 timber sale violated provisions of section 318. For example, subsection (g) provides only fifteen days to file a claim alleging that a proposed sale violates 318(b)(1) by failing to minimize fragmentation of old-growth forest. It is not so clear, however, that Congress intended subsection (g) to apply to claims based on the National Environmental Policy Act, the National Forest Management Act, or the Migratory Bird Treaty Act. By enacting the unconstitutional subsection (b)(6)(A), Congress apparently intended to bar altogether any claims based on these three statutes. In our earlier decision, we declined to give effect to that intent, and we made it clear that plaintiffs are entitled to pursue their claims under these three statutes. See Seattle Audubon Society v. Robertson, 914 F.2d 1311 (9th Cir.1990). We have not yet had to decide whether our earlier decision affects the scope of what is otherwise the plain language of subsection (g). Nor do we decide that question today
 
 
 [9]
 Plaintiffs calculate that if we accepted their position, they would have seven additional days to file challenges to any 1990 timber sales governed by the fifteen-day limitations period of subsection (g). They base these calculations on two premises. The first premise is that the fifteen-day period was tolled until September 24, 1990, when we issued the mandate after filing our opinion of September 18. Second, plaintiffs contend that the tolling resumed on October 2, 1990, when they filed their notice that they were appealing the district court's ruling that equitable tolling did not apply. Plaintiffs' first premise is correct. We express no opinion on the second
 
 
 [10]
 Plaintiffs have argued in this case that until we issued our opinion of September 18, 1990, they were barred from pursuing their claims by the operation of an unconstitutional provision in subsection (b)(6)(A). After we issued our opinion of September 18, and certainly after we clarified and amended it on October 30, neither the statute itself nor the district court's interpretation of the statute prevented the plaintiffs from challenging 1990 timber sales on the grounds that they violated the National Environmental Policy Act, the Migratory Bird Treaty Act, or the National Forest Management Act. The plaintiffs' claim that the fifteen-day limitations period is tolled during the entire time this appeal has been pending amounts to an argument that the district court, by ruling that equitable tolling did not apply, had effectively barred plaintiffs from the courts. This separate question has not been briefed and is not before us