**FIRST INTERSTATE BANK OF NEVADA, as Executor of the Estate of Marilla D. Black and as Trustee of the Marilla D. Black Testamentary Trust, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. CV–S–94–0034–PMP (RLH).**

United States District Court,
D. Nevada.

Nov. 21, 1994.

Mark Solomon, Allen J. Wilt, Paul D. Bancroft and Stephen R. Hackett, Lionel Sawyer & Collins, Reno, NV, for plaintiff.

Brian Feldman, Tax Div., U.S. Dept. of Justice, Washington, DC, for defendant.

### ORDER

PRO, District Judge.

Presently before the Court is Plaintiff First Interstate's Motion for Summary Judgment (# 21) ("Motion"), filed September 19, 1994. The Defendant filed its Opposition (# 23) ("Opposition") on October 7, 1994. Plaintiff filed its Reply (# 24) on October 24, 1994.

### I. Factual and Procedural Background

This is an action by Plaintiff First Interstate Bank of Nevada ("First Interstate") to recover overpayments of federal income taxes by Marilla D. Black, deceased, for the tax years of 1985 to 1990, pursuant to 26 U.S.C. § 7422. See Complaint (# 1). Plaintiff First Interstate, as Executor of the estate of Marilla D. Black and the Trustee of the Marilla D. Black testamentary trust, the sole beneficiary of the residue of the estate of Marilla D. Black, filed tax returns for Marilla D. Black for tax years 1985 through 1990 on October 15, 1991. See id. These returns

sought refunds from overpayments allegedly made by Marilla Black during those years. See id.

Following the Complaint, the Defendant United States of America (the "Government") filed a Motion to Dismiss (# 6) on April 18, 1994, based upon the limitations period governing tax refund suits under 26 U.S.C. § 6511. This Court by Order (# 13), entered May 26, 1994, denied the Government's Motion to Dismiss based on the doctrine of equitable tolling.

Throughout this action, Plaintiff has asserted that Marilla Black was mentally incompetent and suffered from senile dementia during the tax periods at issue. These facts are not disputed by the Government in its Opposition. The Government does dispute the role of Charles Black throughout Marilla Black's mental incompetence.

Charles Black, the son of Marilla Black, earned an economics degree from Stanford University, and following a brief two year period with a brokerage firm acted as an investor for the family, living off of his investments. Deposition of Charles Black. The Government asserts that Charles Black assisted Marilla Black in filing estimated tax payments during the tax periods in issue.

### II. Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

The party moving for summary judgment has the initial burden of showing the absence of a genuine issue of material fact. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); Zoslaw v. MCA Distrib. Corp., 693 F.2d 870, 883 (9th Cir.1982), cert. denied, 460 U.S. 1085, 103 S.Ct. 1777, 76 L.Ed.2d 349 (1983). Once the movant's burden is met by presenting evidence which, if uncontroverted, would entitle the movant to a directed verdict at trial, the burden then shifts to the respondent to set

forth specific facts demonstrating that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). If the factual context makes the respondent's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986); *California Arch. Bldg. Prod. v. Franciscan Ceramics,* 818 F.2d 1466, 1468 (9th Cir.1987), *cert. denied,* 484 U.S. 1006, 108 S.Ct. 698, 699, 98 L.Ed.2d 650 (1988).

If the party seeking summary judgment meets this burden, then summary judgment will be granted unless there is significant probative evidence tending to support the opponent's legal theory. *First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 290, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569 (1968); *Commodity Futures Trading Comm'n v. Savage,* 611 F.2d 270 (9th Cir. 1979). Parties seeking to defeat summary judgment cannot stand on their pleadings once the movant has submitted affidavits or other similar materials. Affidavits that do not affirmatively demonstrate personal knowledge are insufficient. *British Airways Bd. v. Boeing Co.,* 585 F.2d 946, 952 (9th Cir.1978), *cert. denied,* 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979). Likewise, "legal memoranda and oral argument are not evidence and do not create issues of fact capable of defeating an otherwise valid motion for summary judgment." *Id.*

A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the differing versions of the truth. *See Admiralty Fund v. Hugh Johnson & Co.,* 677 F.2d 1301, 1305–06 (9th Cir. 1982); *Admiralty Fund v. Jones,* 677 F.2d 1289, 1293 (9th Cir.1982).

All facts and inferences drawn must be viewed in the light most favorable to the responding party when determining whether a genuine issue of material fact exists for summary judgment purposes. *Poller v.*

*CBS, Inc.,* 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962). After drawing inferences favorable to the respondent, summary judgment will be granted only if all reasonable inferences defeat the respondent's claims. *Admiralty Fund v. Tabor,* 677 F.2d 1297, 1298 (9th Cir.1982).

The trilogy of Supreme Court cases cited above establishes that "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp.,* 477 U.S. at 327, 106 S.Ct. at 2555 (quoting Fed.R.Civ.P. 1). *See also Avia Group Int'l, Inc. v. L.A. Gear Cal.,* 853 F.2d 1557, 1560 (Fed.Cir.1988).

### III. Equitable Tolling

■ This Court in its Order denying the Government's Motion to Dismiss held that equitable tolling principles apply to tax refund claims, and further held that "mental incompetency may, in appropriate cases, toll the statute of limitations for filing a tax refund action." Order (# 13), fn. 2, quoting *Scott v. United States,* 795 F.Supp. 1028 (D.Hawaii 1992) ("*Scott I*"). This Court relied on the opinion of the United States Supreme Court in *Irwin v. Veterans Affairs,* 498 U.S. 89, 95, 111 S.Ct. 453, 457, 112 L.Ed.2d 435 (1990), *reh'g denied,* 498 U.S. 1075, 111 S.Ct. 805, 112 L.Ed.2d 865 (1991) (holding statute of limitations in actions against the government are subject to a rebuttable presumption of equitable tolling applicable to suits against private defendants) and the decisions of several district courts considering the issue. *See Scott I,* 795 F.Supp. 1028 (permitting equitable tolling of Section 6511's limitations period for severe and chronic alcoholism); *Scott v. United States,* 847 F.Supp. 1499 (D.Hawaii 1993) ("*Scott II*") (same); *Wiltgen v. United States,* 813 F.Supp. 1387 (N.D.Iowa 1992) (permitting equitable tolling of Section 6511's limitations for schizophrenia); and *Johnsen v. United States,* 758 F.Supp. 834 (E.D.N.Y. 1991) (permitting equitable tolling of Section 6511's limitations for mental incompetency). This Court rejected the decisions of *United*

*States v. Dalm,* 494 U.S. 596, 608, 110 S.Ct. 1361, 1368, 108 L.Ed.2d 548 (1990), *reh'g denied,* 495 U.S. 941, 110 S.Ct. 2195, 109 L.Ed.2d 523 (1990) (doctrine of equitable recoupment does not support separate suit for refund of earlier paid gift tax after taxpayer settled tax court deficiency proceeding and agreed to pay income tax on transaction), and the decisions of the Eleventh and First Circuits, in *Vintilla v. United States,* 931 F.2d 1444 (11th Cir.1991), *reh'g, en banc, denied,* 942 F.2d 798 (11th Cir.1991) (refusing to allow equitable tolling in tax refund cases), and *Oropallo v. United States,* 994 F.2d 25 (1st Cir.1993) (same). *See* Order (# 13).

■ The law of the case doctrine "precludes a court from re-examining an issue previously decided by the same court, or a higher appellate court, in the same case." *Moore v. Jas. H. Matthews & Co.,* 682 F.2d 830, 833 (9th Cir.1982). The doctrine is a discretionary one created to maintain consistency and avoid reconsideration of issues during the course of a single continuing lawsuit. *Pit River Home and Agricultural Cooperative Association v. United States,* 30 F.3d 1088, 1097 (9th Cir.1994). The Court has already considered whether equitable tolling principles apply to tax refund cases and whether mental incompetency may trigger equitable tolling. *See* Order (# 13). Accordingly, the Court will not reconsider its ruling that equitable tolling principles apply to tax refund claims and that mental incompetency may toll the statute of limitations for such a claim. *See Pit River,* 30 F.3d 1088, 1097.

## IV. Equitable Tolling as available to Plaintiff

■ The doctrine of equitable tolling is applied in two situations. *Seattle Audubon Society v. Robertson,* 931 F.2d 590, 595 (9th Cir.1991).[1] The first involves plaintiffs who were unable to assert their claims due to wrongful conduct on the part of the defendants. *Id.* The second involves "extraordi-nary circumstances beyond plaintiffs' control" that make it impossible to assert their claims timely. *Id.*

■ Plaintiffs here assert that the failure of Marilla Black to timely file a return on her income tax or to assert a claim for refund of tax overpaid was due to her dementia. Plaintiffs urge this Court to apply equitable tolling principles to Plaintiff in this case.

## A. Marilla Black's Mental Incompetence

Plaintiff offers the affidavit and deposition testimony of Margaret Idol in support of its Motion. Margaret Idol, a registered nurse since 1966, is the Director of Nursing Services at Medical Personnel Pool ("MPP"), which provides home nursing care services to those persons who are referred to that organization. *See* Affidavit of Margaret C. Idol, attached as Exhibit A to Plaintiff's Motion ("Idol Affidavit"), paragraphs 2 and 3. Idol conducted a routine initial assessment of Marilla Black's mental and physical condition at the time she was referred, and conducted assessments personally and through registered nurses over whom she had supervisory control throughout the time that Marilla Black was under the care of MPP. Idol Affidavit, paragraph 4. Marilla Black was initially diagnosed as suffering from senile dementia, and according to Idol, Black continually exhibited signs of dementia because she was confused and disoriented as to person, place and time, and was unable to handle her personal hygiene or to conduct any financial affairs. Idol Affidavit, paragraph 4; *see also* Deposition of Margaret Idol, attached as Exhibit B to Plaintiff's Motion ("Idol Deposition").

Plaintiff also offers the affidavit and deposition testimony of Dr. Alton J. Walters in support of its Motion. Dr. Walters, a staff physician at the Henderson Convalescent Hospital, examined Marilla Black upon her admission to that hospital on October 30, 1987. Affidavit of Alton J. Walters, M.D.,

---

**1.** In *Robertson v. Seattle Audubon Society,* 503 U.S. 429, 112 S.Ct. 1407, 118 L.Ed.2d 73 (1992), the United States Supreme Court reversed an earlier decision of the Ninth Circuit in *Seattle Audubon Society v. Robertson,* 914 F.2d 1311 (9th Cir.1990). The Supreme Court decision did not upset the equitable tolling analysis in *Seattle Audubon Society v. Robertson,* 931 F.2d 590 (9th Cir.1991), and does not affect the analysis here. *See National Audubon Society v. United States Forest Service,* ⸺ F.3d ⸺, 1993 U.S.App. LEXIS 38139 (9th Cir.1994).

attached as Exhibit C to Plaintiff's Motion ("Walters Affidavit"), paragraphs 3–5. He diagnosed her as suffering from senile dementia. Dr. Walters supervised the care of Marilla Black throughout her almost two and a half year hospitalization period.[2] Walters Affidavit, paragraphs 5–6.

Both Idol and Dr. Walters concluded that Marilla Black was not mentally competent to "know and understand the natural objects of her bounty, what property she owned or controlled, or how to make an effective testamentary disposition of the same." Idol Affidavit, paragraph 5; Walters Affidavit, paragraph 7; see also Idol Deposition, p. 14–15; Deposition of Alton J. Walters, M.D., attached as Exhibit D to Plaintiff's Motion ("Walters Deposition"), p. 10.

The Government has produced no evidence tending to rebut the state of Marilla Black's mental health during this time period. In fact, the Government concedes that "Marilla D. Black began suffering from senile dementia at some point prior to the tax periods at issue and lost her ability to administer her affairs." Government's Opposition, p. 3. The Court therefore finds that Marilla Black was suffering from senile dementia during the tax periods at issue in this case. The Court further finds that Marilla Black was mentally incompetent to file returns and to file claims for refunds during the appropriate tax periods in this case.

### B. Role of Charles Black

The Government asserts that the decisions in Wiltgen and Johnsen support a totality of the circumstances analysis and consideration of the role of Charles Black. See Wiltgen, 813 F.Supp. 1387 (N.D.Iowa 1992) (permitting equitable tolling of Section 6511's limitations for schizophrenia); and Johnsen, 758 F.Supp. 834 (E.D.N.Y.1991) (permitting equitable tolling of Section 6511's limitations for mental incompetency). The Government attempts to distinguish Johnsen and Wiltgen as applying only to cases where the taxpayers themselves file the returns or make excess payments while under a constraint or barrier, and urges this Court to consider the totality of the circumstances in deciding whether to apply the doctrine of equitable tolling. Specifically, the Government urges this Court consider the effect of Charles Black, Marilla Black's son, who allegedly handled Marilla Black's financial affairs during the relevant time periods.

Charles Black testified in his deposition that he would often prepare estimated tax payment vouchers and checks for his mother to sign, and she would sign them. Deposition of Charles Black, attached as Exhibit 1 to Government's Opposition ("Charles Black Deposition"), pp. 26–27, 30. In this way, the Government appears to argue, Charles Black effectively lifted the constraints of mental incapacity from Marilla Black, and the doctrine of equitable tolling should not apply to allow First Interstate to recover overpayments which are time-barred.

The United States Code provides that "any return, statement, or other document required to be made under any provision of the internal revenue laws or regulations shall be signed in accordance with forms or regulations prescribed by the Secretary." 26 U.S.C. § 6061 (1994). The regulations promulgated under this code section provide: "[e]ach individual (including a fiduciary) shall sign the income tax return required to be made by him, except that the return may be signed for the taxpayer by an agent who is duly authorized in accordance with paragraph (a)(5) or (b) of § 1.6012–1 to make such return." 26 C.F.R. § 1.6061–1(a) (1994).

To act as a fiduciary for a taxpayer in tax matters, a power of attorney is not required, but a "Notice Concerning Fiduciary Relationship" (form 56) should be filed. 26 C.F.R. § 601.503(d) (1994). However, a fiduciary can only act for certain types of taxpayers: (1) dissolved corpoority of the voting stock of the corporation as of the date of dissolution;

---

2. Marilla Black resided at Henderson Convalescent Hospital from October 30, 1987 to her death on February 13, 1990, with the exception of a two and one-half week period when she was released from the Henderson Convalescent Hospital and hospitalized at St. Rose de Lima (St. Rose Dominican) Hospital for an acute abdominal obstruction. Walters Affidavit, exhibit C to Motion, page 2.

(2) insolvent taxpayer; (3) deceased taxpayers; (4) taxpayers for whom a guardian or other fiduciary has been appointed by a court of record; and (5) taxpayers who have themselves appointed a trustee. 26 C.F.R. § 601.503(d)(1)–(4) (1994). No court of record appointed a guardian for Marilla Black. Charles Black himself never obtained a formal power of attorney for his mother. Charles Black Deposition, p. 26. The Court therefore finds that Marilla Black does not come within the types of taxpayers for which a fiduciary can act. The Court further finds that Charles Black did not qualify as a fiduciary.

To act as a duly authorized agent for a taxpayer, an agent filing a return must also send a power of attorney authorizing the agent to represent the principal in making, executing, or filing the return. 26 C.F.R. § 1.6012–1(a)(5) (1994). Charles Black did not have a power of attorney. Charles Black Deposition, p. 26. The Court finds that Charles Black did not qualify as a duly authorized agent.

A "recognized representative" may file tax returns on behalf of a taxpayer. 26 C.F.R. § 601.502(a)(1). To qualify as a "recognized representative," a person must be "appointed as an attorney-in-fact under a power of attorney," must be a member of one of the categories listed in § 601.502(b), and must file a declaration of designation. 26 C.F.R. § 601.502(a)(1); see also 26 C.F.R. § 601.504(a)(6). Charles Black did not have a power of attorney to act on his mother's behalf. Charles Black Deposition, p. 26. The Court finds that Charles Black did not qualify as a recognized representative.

The United States Code imposes a duty upon certain persons to file returns for taxpayers under a disability at the time the return is due. Under that section, "[i]f an individual is unable to make a return required under subsection (a), the return of such individual shall be made by a duly authorized agent, his committee, guardian, fiduciary or other person charged with the care of the person or property of such individual." 26 U.S.C. § 6012(b) (1994). The parallel regulation provides: "[a] fiduciary acting as the guardian of a minor, or as the guardian or committee of an insane person, must make the return of income required in respect of such person." 26 C.F.R. § 1.6012–3(b)(3) (1994). Charles Black was not appointed a guardian of Marilla Black, nor was he otherwise legally charged with her care. He did not have the status to take legally binding action on behalf of Marilla Black. The Court finds that Charles Black did not have the duty to act on behalf of Marilla Black.

Because Charles Black did not qualify as a fiduciary, a duly authorized agent, or a recognized representative, he could not have signed Marilla Black's income tax returns. Moreover, the law imposed no duty on him to handle her income tax returns. It would be anomalous to prevent the doctrine of equitable tolling in a case based on a third party's incomplete assistance in filing tax returns when that third party was not authorized to provide such assistance.

Tolling is an extraordinary remedy which courts should apply sparingly. *See Irwin*, 498 U.S. 89, 95, 111 S.Ct. 453, 457. However, it is available for a plaintiff unable to gain effective access to the courts due to extraordinary circumstances [3] beyond that plaintiff's control. *See Seattle*, 931 F.2d 590, 595. *Cf., Irwin*, 498 U.S. 89, 95, 111 S.Ct. 453, 457 (excusable neglect not enough to invoke equitable tolling). In considering all external forces on Marilla Black, *see Seattle*, 931 F.2d 590, 595, the Court finds that equitable tolling is appropriate in this case and will apply it in favor of Marilla Black. Accordingly, the Plaintiff's Motion for Summary Judgment is granted.

## V. Computation of Judgment

The Government has admitted to all of the overpayments or credits that Plaintiff seeks to recover. *See* United States' Responses to Requests for Admission, attached as Exhibit E to Motion. Marilla Black paid a total of

---

3. While *Seattle* and the case cited by the *Seattle* court applied equitable tolling when wartime and political forces effectively prevented plaintiff from accessing the courts, the Court finds that severe mental incapacity and senile dementia, such as the kind present in Marilla Black, effectively prevents a person from having meaningful access to administrative and judicial remedies. *See Wiltgen; Johnsen.*

$241,268.00 on account of her individual income tax liability for the tax years 1985 to 1990. Marilla Black's actual tax liability for those years totalled $222,066.00. The amounts paid on behalf of Marilla Black for the tax years at issue exceeded her tax liability for that period by $19,202.00.

■ Interest is allowed on overpayments. 26 U.S.C. § 6611 (1994). The rate of that interest is set by 26 U.S.C. § 6621 (1994). For late returns, interest on overpayments does not accrue until the date the return is filed. 26 U.S.C. § 6611(b)(3). Interest on the $19,202.00 overpayment therefore runs from October 15, 1991. Applying the interest rates prescribed by various revenue rulings,[4] which is compounded daily, 26 U.S.C. § 6622(a), the total value of this overpayment as of the date of repayment by the Government can be readily calculated.

■ Plaintiff also paid an additional $128,-381.78 in assessed penalties and interest for tax years 1985, 1986, 1988, 1989 and 1990. The interest on this amount runs from the date of payment. *See* 26 U.S.C. § 6611(b)(2). The Internal Revenue Service also refunded an amount of $7,743.87 and an amount of $11,724.29 on the account of Marilla Black for tax year 1985. The value of this overpayment can also be readily calculated by the parties.

IT IS THEREFORE ORDERED THAT Plaintiff's Motion for Summary Judgment (# 21) is granted and that Defendant shall pay the sum of $151,306.05, plus interest. The Clerk of Court shall enter Judgment accordingly.

---

4. *See* Rev.Rul. 91–50, 1991–2 C.B. 430 (9% for period of October 1, 1991 to December 31, 1991); Rev.Rul. 91–65, 1991–2 C.B. 432 (8% for period of January 1, 1992 to March 31, 1992); Rev.Rul. 92–21, 1992–1 C.B. 371 (7% for period of April 1, 1992 to June 30, 1992); Rev.Rul. 92–44, 1992–1 C.B. 373 (7% for period of July 1, 1992 to September 30, 1992); Rev.Rul. 92–77, 1992–1 C.B. 373 (6% for period of October 1, 1992 to December 31, 1992); Rev.Rul. 92–110, 1992–2 C.B. 311 (6% for period of January 1, 1993 to March 31, 1993); Rev.Rul. 93–24 1993–14 I.R.B. 5 (6% for period of April 1, 1993 to June 30, 1993); Rev.Rul. 93–40, 1993–23 I.R.B. 9 (6% for period of July 1, 1993 to September 30, 1993); Rev.Rul. 93–63, 1993–30 I.R.B. 40 (6% for period of October 1, 1993 to December 31, 1993); Rev.Rul. 93–94, 1993–42 I.R.B. 8 (6% for period January 1, 1994 to March 31, 1994); Rev. Rul. 94–21, 1994–14 I.R.B. 9 (6% for period April 1, 1994 to June 30, 1994); Rev.Rul. 94–39, 1994–26 I.R.B. 9 (7% for period July 1, 1994 to September 30, 1994); Rev.Rul. 94–58, 1994–39 I.R.B. 6 (8% for period October 1, 1994 to December 31, 1994).